[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
_____

No. 96-9112
_____
D. C. Docket No. CV294-96-AAA

DANIEL BROUGHTON,

Plaintiff-Appellee,

versus

FLORIDA INTERNATIONAL UNDERWRITERS, INC.,

Defendant-Appellant.

_____

No. 96-9139
_____
D. C. Docket No. CV294-96-AAA

DANIEL BROUGHTON,

Plaintiff-Appellant,

versus

FLORIDA INTERNATIONAL UNDERWRITERS, INC.,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Georgia
_____

**(April 24, 1998)**

Before ANDERSON and BLACK, Circuit Judges, and HOEVELER[*], Senior District
Judge.

BLACK, Circuit Judge:

_____

[*]Honorable William M. Hoeveler, Senior U.S. District Judge for
the Southern District of Florida, sitting by designation.

Daniel Broughton, a Georgia resident, brought this suit against Florida International Underwriters, Inc. (FIU) for breach of its alleged statutory duty under Georgia law to ensure the financial soundness of an insurer before placing insurance with such insurer and its alleged duty to notify Broughton, as the insured, that the insurer was financially unsound. Broughton sought to recover $50,000 in unpaid insurance benefits and statutory penalties and attorney's fees. We hold that the district court did not have subject matter jurisdiction. Accordingly, we vacate the judgment entered by the district court and remand the case with instructions to dismiss for lack of subject matter jurisdiction.

## I. FACTS

Broughton is a Georgia resident who owned the shrimp trawler JOAN S. Beginning in the late 1980's or early 1990's, Broughton obtained surplus line insurance for the JOAN S. through Coastal Marine Insurance Agency (Coastal), an insurance agency operating in Georgia and specializing in marine insurance.

In 1993, Coastal procured surplus line insurance for Broughton from Usher Insurance Company (Usher), a surplus line insurer created under the laws of Antigua and operating out of Florida, through FIU, a surplus line insurance broker doing business in Florida and not licensed to act as an insurance agent or broker in Georgia.

Usher issued the insurance policy covering the JOAN S. on July 20, 1993, to be effective May 6, 1993.

FIU and Coastal had a written producer agreement specifically providing that FIU had no agency or fiduciary relationship with the insureds represented by Coastal. All communications between Broughton and FIU were handled through Coastal.

Usher was placed in liquidation by a Florida Circuit Court on December 13, 1993; all insurance policies issued by Usher were to be canceled as of January 10, 1994. On December 17, 1993, FIU informed Coastal in writing of the liquidation and told Coastal to notify Broughton of the policy cancellation. On December 22, 1993, FIU notified Coastal of another insurer that was willing to offer replacement coverage. Coastal did not inform Broughton of either communication.

The JOAN S. capsized on January 1, 1994, and was totally destroyed. Usher has not paid Broughton's claim on its policy. Broughton filed suit against Usher on the insurance policy and against FIU for breach of its alleged duty under Ga. Code Ann. § 33-5-25 to ensure the financial soundness of Usher before placing insurance with the company[1] and breach of its alleged duty to inform Broughton that Usher was

---

[1] Section 33-5-25 provides:

(a) The broker shall ascertain the financial condition of the unauthorized insurer before placing insurance with the unauthorized insurer and shall not place surplus line insurance with any insurer who does not meet, according to current available reliable financial information, the requirements provided in subsection (b) of this

3

financially unsound.  In his complaint, Broughton demanded the $50,000 policy amount and statutory penalties and attorney fees in the amounts of $12,500 and (at least) $10,000, respectively.  The district court dismissed the case against Usher for failure to prosecute because Broughton failed to perfect service.  Broughton's case against FIU proceeded to trial.  At the close of Broughton's case, FIU moved to dismiss for lack of subject matter jurisdiction.  The district court denied the motion.  The jury found in favor of Broughton and awarded him the policy amount of $50,000.

After trial, FIU again moved to dismiss on the grounds that the district court did not have subject matter jurisdiction.  FIU also moved in the alternative for judgment as a matter of law or for a new trial.  On the issue of subject matter jurisdiction, the district court agreed with FIU that the statutory penalty and attorney's fees were not recoverable against FIU and that the amount in controversy therefore did not exceed $50,000 as required for diversity jurisdiction.  The district court further concluded,

Code section.
(b) The broker shall so insure only:

. . . .

(2) With an alien insurer which has been established for at least ten years and which has at least $10 million in capital and surplus, unless the character, trustworthiness, and financial integrity of an alien insurer is of such a nature that it would be in the best interests of the policyholders and the general public to use such insurer in accordance with standards prescribed by rules and regulations of the Commissioner;

. . . .

however, that it did have admiralty jurisdiction over the case and therefore denied FIU's motion to dismiss. The district court also denied FIU's request for a directed verdict or new trial.

FIU appeals the district court's denial of its motion to dismiss for lack of subject matter jurisdiction, or, in the alternative, for a directed verdict or new trial. Broughton appeals the district court's determination that he was not entitled to recover the statutory penalty and attorney's fees and its resulting conclusion that it did not have diversity jurisdiction.

## II. ANALYSIS

Subject matter jurisdiction is a question of law that the Court reviews de novo. *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996) (citation omitted).

A. Diversity Jurisdiction

At the time Broughton filed this case, federal courts had jurisdiction under 28 U.S.C. § 1332 over state law claims between citizens of different states where the amount in controversy exceeded $50,000, exclusive of interest and costs.[2] The parties

_____

[2] 28 U.S.C. § 1332 has since been amended to require that the amount in controversy exceed $75,000, exclusive of interest and costs.

do not dispute that they are citizens of different states. The only issue is whether the amount in controversy exceeds $50,000.

We will not dismiss a case for lack of subject matter jurisdiction under the diversity statute "unless it appears to a 'legal certainty' that plaintiff's claim is actually for less than the jurisdictional amount." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1094 (11th Cir. 1994) (citation omitted). "The determination of whether the requisite amount in controversy exists is a federal question; however, [s]tate law is relevant to this determination insofar as it defines the nature and extent of the right plaintiff seeks to enforce." *Duderwicz v. Sweetwater Sav. Ass'n*, 595 F.2d 1008, 1012 (5th Cir. 1979) (internal quotations and citation omitted).[3]

In his complaint and throughout the proceedings in this case, Broughton has contended that he is entitled to recover not only the $50,000 in unpaid insurance benefits, but also statutory penalties and attorney's fees in the amounts of $12,500 and (at least) $10,000, respectively, under Ga. Code Ann. § 33-4-6. Section 33-4-6 provides that if an insurer in bad faith refuses to pay a valid claim under an insurance policy, "the insurer shall be liable to pay [the policy] holder, in addition to the loss, not more than 25 percent of the liability of the insurer for the loss and all reasonable

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business September 30, 1981.

attorney's fees for the prosecution of the action against the insurer." Ga. Code Ann. § 33-4-6. Although section 33-4-6 provides for the recovery of the statutory penalty and attorney's fees against only the insurer, Broughton contends that Ga. Code Ann. § 33-23-41 brings FIU within the section 33-4-6 liability provisions. In support of his argument, Broughton specifically relies on the following language in section 33-23-41:

> (a) Any person who in this state acts, purports to act, or holds himself or herself out as an agent . . . for an insurer that has not obtained from the Commissioner a certificate of authority then in effect to do business in this state as required by this title or who has not obtained a certificate of authority as required by this article . . . shall pay a sum equal to the state, county, and municipal taxes . . . . *Violators of this Code section shall also be personally liable to the same extent as the insurer upon every contract of insurance made by the insurer with reference to a risk having a situs in this state, if the violator participated in the solicitation, negotiation, or making of the contract or in any endorsement to the contract*, in any modification of the contract, or in the collection or forwarding of any premium or portion of the premium relating to such contract. This Code section shall have no application to a contract of insurance entered into in accordance with Chapter 5 of this title.

Although this section can act to bring entities other than insurers within the section 33-4-6 liability, Ga. Code Ann. § 33-23-1(b)(3) excludes representatives of ocean marine insurers from the definition of agent. Under the facts alleged in this case, FIU acted as a representative of an ocean marine insurer. Section 33-23-41 does not, therefore, bring FIU within the statutory liability provisions of section 33-4-6.

7

Broughton presents no meritorious argument under which FIU could be subjected to the provisions of section 33-4-6. As section 33-4-6 was the sole basis alleged in the complaint under which Broughton contended he could recover in excess of $50,000, and because Broughton has not presented any viable alternative theory under which he could recover in excess of $50,000, we hold that it is clear to a legal certainty that Broughton's claim against FIU did not meet the § 1332 amount in controversy requirement.[4]

B.    Admiralty Jurisdiction

The test for determining the existence of admiralty jurisdiction under 28 U.S.C. § 1333(1) varies depending on the nature of the claim asserted. Broughton's claim plainly is constructed on tort principles. In the complaint, Broughton alleged that FIU was "under a duty not to place coverage with a surplus lines company unless said company was in good financial condition, and had the financial capability to pay its claims;" FIU "breached its duty to [Broughton] by placing [Broughton's] coverage with [Usher], when said insurance company was unsound financially;" and because FIU "breached its duty to the Plaintiff, [FIU] is liable to the Plaintiff for the amount that the Plaintiff was and is entitled to recover from [Usher]." Broughton's subsequent

---

[4] The Court notes that Ga. Code Ann. § 33-5-58, and not Ga. Code Ann. § 33-4-6, appears to be the applicable penalty provision due to Usher's status as an alien insurer. Our resolution of the issues in this case would, however, be the same regardless of which penalty section Broughton cited.

filings also indicate that his claim against FIU sounds in tort. For example, the pretrial order submitted by the parties and entered by the district court states that Broughton "contends that the Defendant, Florida International Underwriters, Inc., failed to fulfill its statutory obligation to ascertain that Usher Insurance Company was financially sound, and also failed to notify the Plaintiff that Usher Insurance Company was unsound financially."

"[F]or a tort claim to be cognizable under admiralty jurisdiction, the activity from which the claim arises must satisfy a location test and it must have sufficient connection with maritime activity." *Alderman v. Pac. N. Victor, Inc.*, 95 F.3d 1061, 1064 (11th Cir. 1996) (citing *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534, 115 S. Ct. 1043, 1048 (1995)). To satisfy the location test, the tort must have occurred on navigable water or the injury suffered on land must have been caused by a vessel on navigable water. *Jerome B. Grubart, Inc.*, 513 U.S. at 534, 115 S. Ct. at 1048. With respect to the connection test, two issues must be considered: (1) whether, upon assessment of the general features of the type of accident involved, the "incident has a potentially disruptive impact on maritime commerce;" and (2) "whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Jerome B.*

*Grubart, Inc.*, 513 U.S. at 534, 115 S. Ct. at 1048 (internal quotations and citation omitted).

In this case, the alleged tort did not occur on navigable water; nor is this a case where an injury on land was caused by a vessel on navigable water. Although there may be some connection between the alleged tort and traditional maritime activity, the location test for admiralty jurisdiction is not satisfied in this case. On this basis, we hold that the district court did not have admiralty jurisdiction.

## III.  CONCLUSION

Under the foregoing analysis, we conclude that the district court did not have subject matter jurisdiction to adjudicate Broughton's claims against FIU. We vacate the judgment entered by the district court and remand with instructions to dismiss for lack of subject matter jurisdiction.

VACATED AND REMANDED.