[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
05/28/99
THOMAS K. KAHN
CLERK

No. 97-9053

D. C. Docket No. CV496-104

PHILIP R. B. MCMASTER, Doctor,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA, Department of the Interior, Fish and Wildlife Service,
MOLLIE H. BEATTIE, in her official capacity as Director, United States Fish and Wildlife
Service, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Georgia

**(May 28, 1999)**

Before BARKETT, Circuit Judge, KRAVITCH and MAGILL*, Senior Circuit Judges.

_____

*Honorable Frank J. Magill, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by
designation.

MAGILL, Senior Circuit Judge:

Dr. Philip McMaster, a beneficiary of the Wassaw Island Trust ("Trust"), appeals the district court's grant of summary judgment in favor of the United States in connection with his action, brought under the Quiet Title Act, 28 U.S.C. § 2409a, alleging that the United States is breaching various written and oral covenants made in connection with its purchase of land formerly owned by the Trust. Because the district court lacked subject matter jurisdiction under the Quiet Title Act, we vacate its order of summary judgment and remand with instructions that the case be dismissed.

## I.

The Wassaw Island Trust was originally formed in 1930 for the purpose of preserving Wassaw Island, Georgia, in its natural state. By 1969, the Trustees feared that the State of Georgia might condemn the island and open it to public use or development. Thus, Dr. McMaster, then a Trustee, began negotiating with Dr. John Gottschalk, director of the agency now known as the Fish and Wildlife Service, to convey Wassaw Island to the United States for preservation purposes but to retain a portion of the island, known as the Home Parcel, for Trust beneficiaries. In a series of negotiations, Dr. Gottschalk orally agreed that the United States would not allow camping on the island and would not allow hunting on the island except when necessary to thin animal herds. These agreements were not memorialized in a formal written contract signed prior to the Trust's delivery of the deed.

Rather than conveying the land directly to the United States, the Trust utilized a non-profit organization known as the Nature Conservancy to facilitate the transaction. On October 20, 1969, the Trust conveyed Wassaw Island (except for the Home Parcel) to the Nature

2

Conservancy for the price of one million dollars. Although the deed memorializing the transfer ("Trust Deed") contained several restrictive covenants, it expressly recited that the Trust was conveying the land to the Nature Conservancy "forever in fee simple." Trust Deed at 5. That same day, the Nature Conservancy deeded its portion of the island to the United States for one dollar. Unlike the Trust Deed, the deed from the Nature Conservancy to the United States ("Government Deed") was not in fee simple. Rather, the Government Deed provided that "[t]he title of the Grantee [(United States)] shall cease . . . upon the . . . [u]se of the Granted Premises for hunting . . . ." Government Deed at 3-4. The Government Deed also contained a reverter clause, providing that "the title shall revert in fee simple . . . to the Grantor [(Nature Conservancy)]" in the event that the United States used Wassaw Island for hunting. Id. at 4. Dr. McMaster specifically chose this arrangement "to ensure that if for any reason the [United States's] title to the [land] should lapse, title would revert to a non-profit nature organization rather than to the Wassaw Island Trust." Complaint at ¶ 22. Both deeds included a restrictive covenant that prohibited hunting on the island except in the case where it is "supervised by any governmental agency for the purpose of reducing an overabundance of any species of mammal." Trust Deed at 4; Government Deed at 4. Neither deed contained any prohibition on camping.

Since the United States acquired its portion of Wassaw Island, it has allegedly violated the oral no-camping promise and the written no-hunting restrictive covenant. Upset by this development, Dr. McMaster (now merely a Trust beneficiary using the Home Parcel) filed suit against the government, seeking to enforce the oral promise and the written restrictive covenant. Notably, the Nature Conservancy, which purchased the island in fee simple from the Trust, is not a party to this action.

The government initially filed a motion to dismiss this action on the ground that the Quiet Title Act did not confer subject matter jurisdiction on the district court. When the court denied the government's motion, the government filed a motion for summary judgment, contending that (1) the no-camping promise was unenforceable because it did not survive the deed and (2) the no-hunting restrictive covenant constituted an unenforceable forfeiture provision. After analyzing the conveyances under Georgia law, the district court agreed with the government and entered summary judgment in its favor. Dr. McMaster now appeals.

**II.**

We do not address the merits of this appeal because we find that the district court lacked subject matter jurisdiction. "It is well established that the question of subject matter jurisdiction may be raised at any stage in the proceedings by any party or by the court on its own motion." Majd-Pour v. Georgiana Community Hosp., Inc., 724 F.2d 901, 902 (11th Cir. 1984).

"Federal courts exercise limited subject matter jurisdiction, empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution or otherwise authorized by Congress." Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994). "The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586 (1941) (citations omitted). The terms "upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." Soriano v. United States, 352 U.S. 270, 276 (1957).

Dr. McMaster bases subject matter jurisdiction solely upon the Quiet Title Act ("QTA"), 28 U.S.C. § 2409a. The QTA provides that the "United States may be named as a party

4

defendant in a civil action . . . to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights." 28 U.S.C. § 2409a(a) (emphasis added). The QTA thus waives the United States's sovereign immunity and "permit[s] plaintiffs to name it as a party defendant in civil actions to adjudicate title disputes involving real property in which the United States claims an interest." Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands, 461 U.S. 273, 276 (1983); see also Gardner v. Stager, 103 F.3d 886, 887 (9th Cir. 1996) (explaining that the QTA waives the sovereign immunity of the United States "for the purpose of determining title to real property"); State of Florida, Dep't of Bus. Regulation v. United States Dep't of Interior, 768 F.2d 1248, 1253 (11th Cir. 1985) ("With the enactment of the Quiet Title Act, Congress waived the United States' [sic] immunity with respect to certain kinds of lawsuits, allowing the United States to be named as a defendant in lawsuits seeking the adjudication of disputed title to land.").

"The meaning of the phrase 'adjudicate a disputed title' presents a federal question, the answer to which must be sought in federal law." United States v. Bedford Assocs., 657 F.2d 1300, 1316 (2d Cir. 1981). As the phrase itself demonstrates, there must be a dispute, and that dispute must relate to "title to real property." 28 U.S.C. § 2409a(a). The dispute must not merely concern "title to real property" in the abstract, but must concern the quality of title between the plaintiff and the United States and not the quality of title between the United States and a third party. See Cadorette v. United States, 988 F.2d 215, 223 (1st Cir. 1993) (explaining that a QTA action "is, generally speaking, an in personam proceeding, the purpose of which is to determine which named party has superior claim to a certain piece of property" (citation omitted)); see also 28 U.S.C. § 2409a(e) (providing that district court does not have jurisdiction

5

under the QTA if the United States's interest in the property is not adverse to the plaintiff's interest in the property). This is because "[i]f the plaintiff prevails, he can recover the land wrongly held by the United States." Cadorette, 988 F.2d at 223; see also LaFargue v. United States, 4 F. Supp. 2d 580, 586 (E.D. La. 1998) ("[A] quiet title claim under the QTA disputes ownership and provides the landowner with a declaration of title and recovery of the land.").

In this case, the United States attacks the district court's subject matter jurisdiction, claiming that this suit was not brought "to adjudicate a disputed title to real property." 28 U.S.C. § 2409a(a). A defendant may attack subject matter jurisdiction in two different ways--facially and factually. Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (per curiam). "'Facial attacks' on the complaint 'require[] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true . . . .'" (citation omitted)). Here, Dr. McMaster pleaded that he has easement rights to the United States's portion of Wassaw Island, including the right to "pass and repass on foot, carriage, bicycle or motor vehicle the roads and pathways thereof." Trust Deed at 3. He also pleaded that the United States has impermissibly interfered with his easement rights by forbidding him from using these roads and pathways. See Complaint at ¶ 36. These pleadings would survive a facial attack. Cf. County of Patrick, Va. v. United States, 596 F.2d 1186, 1187 (4th Cir. 1979) (jurisdiction not questioned under the QTA where plaintiffs alleged "wrongful interference by the United States with their use and enjoyment of an appurtenant easement").

Although Dr. McMaster's complaint survives a facial attack, the United States here is making a factual attack on the district court's subject matter jurisdiction. "'Factual attacks,' . . . challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and

6

matters outside the pleadings, such as testimony and affidavits, are considered.'" Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990) (per curiam) (citation omitted). "'[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" Id. (citation omitted). In response to a factual attack, a court should dismiss the complaint for lack of subject matter jurisdiction "'where the federal claim is clearly immaterial or insubstantial.'" Id. (citation omitted).

After reviewing the voluminous record in this case, we hold that Dr. McMaster's allegations do not withstand the government's factual attack on subject matter jurisdiction. As explained above, we determine whether this lawsuit survives the government's factual attack by looking to matters outside the pleadings and we do not accord any presumptive truthfulness to the allegations in the complaint. See Lawrence, 919 F.2d at 1529. Here, Dr. McMaster has never presented any argument to either the district court or this court concerning the United States's alleged interference with his easement rights. Rather, Dr. McMaster has focused his arguments, both below and on appeal, solely on the issue of whether the no-camping oral agreement and the no-hunting restrictive covenant are enforceable. The district court granted summary judgment in favor of the government based solely on its determination that Dr. McMaster could not enforce either covenant. The district court never considered whether the government was interfering with Dr. McMaster's easement rights, and Dr. McMaster never requested the district court to make such a determination. On appeal, Dr. McMaster challenges only the district court's conclusions as to the enforceability of the covenants. He does not suggest that the district court should have made any findings with respect to his easement rights

7

and he does not argue that such an adjudication is necessary or desired. Notwithstanding the allegations in his complaint, therefore, it is clear that the sole dispute here concerns the enforceability of the covenants. Even assuming Dr. McMaster has not abandoned his claim that the United States is interfering with his easement by failing to ever argue that claim, his conduct demonstrates that he deems this claim insubstantial. Therefore, his pleaded claim that the United States interfered with his easement rights does not withstand the United States's factual attack on jurisdiction.

Accordingly, the question here is whether the no-hunting restrictive covenant in the Trust Deed and the alleged oral no-camping promise made by Dr. Gottschalk (on behalf of the United States) to Dr. McMaster create a "disputed title to real property" as between Dr. McMaster and the United States. The answer is no.

Courts have typically "equated the requirement of a disputed title with disputed ownership." Dunbar Corp. v. Lindsey, 905 F.2d 754, 759 (4th Cir. 1990); see also Pai 'Ohana v. United States, 875 F. Supp. 680, 693 (D. Haw. 1995) ("The word 'title' as used in 28 U.S.C. § 2409a connotes an ownership interest."), aff'd, 76 F.3d 280 (9th Cir. 1996); Landow v. Carmen, 555 F. Supp. 195, 197 (D. Md. 1983) (same); cf. Black's Law Dictionary 1485 (6th ed. 1990) (defining "title" in context of real property law as "[t]he formal right of ownership of property" or "[t]he right to or ownership in land"). Taken literally, therefore, the words of the statute "permit adjudications only when the title or ownership of real property is in doubt" as between the plaintiff and the United States.[1] Cadorette, 988 F.2d at 223; see also Landow, 555 F. Supp. at

_____

[1]Relying on 28 U.S.C. § 2409a(d), Dr. McMaster argues that he must merely demonstrate that he has some "right, title, or interest . . . in the real property" to bring suit under the QTA and that he need not demonstrate that there is some dispute between the parties concerning his right,

8

197 (canvassing existing case law and explaining that "this Court is not aware of any case holding that a dispute about a non-ownership interest is sufficient to confer Quiet Title Act jurisdiction").

We hold that the present dispute between Dr. McMaster and the United States concerning the covenants fails to call into question either the title to or the ownership of Wassaw Island as between Dr. McMaster and the United States. The United States received the land from the Nature Conservancy, which received the land "forever in fee simple" from the Trust. Trust Deed at 5. The Trust Deed did not include any power of reverter in favor of the Trust or its beneficiaries which would operate in the event that the Nature Conservancy or the United States breached a restrictive covenant. Dr. McMaster, as a beneficiary of the Trust, does not and cannot claim that the government's alleged breach of these covenants somehow gives him or the Trust title rights or ownership rights to the United States's portion of Wassaw Island. See Complaint at ¶ 22 (Dr. McMaster specifically chose the conveyance arrangement between the Trust, the Nature Conservancy and the United States "to ensure that if for any reason the [United States's] title to the [land] should lapse, title would revert to a non-profit nature organization rather than to the Wassaw Island Trust."); cf. Prater v. United States, 618 F.2d 263, 263 (5th Cir. 1980) (per curiam) (explaining that jurisdiction existed under the QTA where the plaintiff "asserted equitable title to the realty, under Georgia trust law" and the court was called upon to adjudicate whether the plaintiff, in fact, had such equitable title). Certainly, Dr. McMaster has not pointed to any authority suggesting that this court may grant him the typical relief awarded to

---

title or interest in the real property. 28 U.S.C. § 2409a(d). This argument overlooks the fact that § 2409a(d) sets forth the pleading requirements for an action brought pursuant to the QTA, while § 2409a(a) provides the jurisdictional parameters of the QTA.

a prevailing plaintiff under the QTA--an order that he has a superior claim to the United States's portion of Wassaw Island than that of the United States or that he is entitled to the United States's portion of Wassaw Island.

In essence, "the only dispute between the parties concerns the terms of a[n] . . . agreement which does not call into question the ownership of real property" vis-a-vis the two parties. Landow, 555 F. Supp. at 197; see also Ginsberg v. United States, 707 F.2d 91, 93 (4th Cir. 1983) (holding that there is no jurisdiction under the QTA in "situations where there is privity of contract between the United States . . . and [plaintiff], since the dispute over an alleged breach of contract [(a rental agreement whereby the United States occupied and used plaintiff's building)] hardly casts doubt on the title or ownership of the property"). Regardless of whether the United States breached the no-camping promise or the no-hunting restrictive covenant, there is no doubt that, as between the United States and Dr. McMaster, the United States still owns and retains title to its portion of Wassaw Island and Dr. McMaster has easement rights with respect to that portion of Wassaw Island. Because the no-camping promise and the no-hunting restrictive covenant do not create a disputed title to real property between Dr. McMaster and the United States, we find the QTA does not confer jurisdiction over Dr. McMaster's breach-of-covenant claims against the United States.

**III.**

For the foregoing reasons, we VACATE the district court's award of summary judgment in favor of the United States and REMAND this matter to the district court with instructions to dismiss this action for lack of subject matter jurisdiction.

10