SEGUROS COMERCIAL AMERICA, Seguros Inbursa, SA, Grupo Nacional Provincial, S.A., Seguros Cigna, S.A., Seguros Tepeyac, SA, Seguros BBV–Probusa, S.A., Seguros Bancomer, S.A. De C.V., Plaintiffs,

v.

Charles C. HALL, George E. Bernier, Jr., Tim Lavey Automobiles, Inc., Manheim Remarketing Limited Partnership, Greater Orlando Auto Auction, Inc., Florida Auto Auction of Orlando, Inc., Orlando Executive Wholesale, Inc., Malibu Construction and Investment, Inc., Car Store of Altamonte, Inc., Defendants.

No. 6:99CV1567ORL28C.

United States District Court,
M.D. Florida,
Orlando Division.

Sept. 15, 2000.

Michael R. Gibbons, Lowndes, Drosdick, Doster, Kantor & Reed, P.A., Orlando, FL, Fred J. Kumetz, Stephen Glick, Kumetz & Glick, Los Angeles, CA, for plaintiffs.

Mark Howard Ruff, Alvarez, Sambol, Winthrop & Madson, P.A., Winter Park, FL, Philip Jay Spengler, II, Office of the Atty. Gen., General Civil Div., General Legal Services Div., Tampa, FL, for Charles C. Hall, defendant.

Mark Fleming Fisher, Meininger, Fisher & Mangum, P.A., Orlando, FL, David S. McDonald, Orlando, FL, for George E. Bernier, Jr., defendant.

David S. McDonald, Orlando, FL, for Tim Lavey Automobiles, Inc., Greater Orlando Auto Auction, Inc., defendants.

Charles Raymond Stepter, Jr., Fishback, Dominick, Bennett, Stepter, Ardaman, Ahlers & Bonus, Orlando, FL, for Manheim Remarketing Ltd. Partnership, Florida Auto Auction of Orlando, Inc., Malibu Const. and Investment, Inc., defendants.

Mark Fleming Fisher, Meininger, Fisher & Mangum, P.A., Orlando, FL, for Orlando Executive Wholesale, Inc., defendant.

Harvey Martin Alper, Alper & Crichton, P.A., Altamonte Springs, FL, for Car Store of Altamonte, Inc., defendant.

Jeffrey S. Hirsh, Goldberg & Hirsh, Miami, FL, for Government of Mexico, amicus.

Craig M. Blackwell, U.S. Department of Justice, Washington, DC, for U.S., amicus.

## ORDER

ANTOON, District Judge.

This cause came on for consideration without oral argument on Defendant Orlando Executive Wholesale Inc.'s Motion to Dismiss (Doc. 24, filed January 25, 2000) and Defendant Charles C. Hall's Motion to Dismiss (Doc. 28, filed February 9, 2000).

The United States Magistrate Judge has submitted a Report and Recommendation (Doc. 76, filed June 20, 2000).

Noting that no objections were timely filed and after an independent review of the record in this matter, including consideration of the Amicus Curiae Brief submitted by the United Mexican States (Doc. 51, filed March 15, 2000) and the Statement of Interest submitted by the United States (Doc. 72, filed May 4, 2000), the Court agrees with the findings of fact and conclusions of law in the Report and Recommendation. Therefore it is **ORDERED** as follows:

1. The Report and Recommendation (Doc. 76, filed June 20, 2000) is **ADOPTED** and **CONFIRMED** and made part of this Order.

2. The amended complaint is **DISMISSED** for failure to state a claim upon which relief may be granted, without prejudice to Plaintiffs' rights to file a second amended complaint within 20 days of the date this Order is filed.

## REPORT AND RECOMMENDATION

Glazebrook, United States Magistrate Judge.

This cause came on for hearing on March 15, 2000 and April 28, 2000 on the following motions:

| MOTION: | DEFENDANT ORLANDO EXECUTIVE WHOLESALE INC.'S MOTION TO DISMISS [Docket No. 24] |
|---|---|
| FILED: | January 25, 2000 |
| RECOMMENDATION: | GRANTED. |

| MOTION: | DEFENDANT CHARLES C. HALL'S MOTION TO DISMISS [Docket No. 28] |
|---|---|
| FILED: | February 9, 2000 |
| RECOMMENDATION: | GRANTED in part and DENIED in part. |

## I.  INTRODUCTION

On December 10, 1999, the plaintiffs, all of which are Mexican insurance companies [the "Mexican insurers"] filed a two-count complaint seeking two counts of declaratory relief with respect to approximately fifty stolen automobiles [the "stolen autos"]. Docket No. 1. The complaint alleges that, over a two-year period, autos were stolen in Mexico from various owners insured by the Mexican insurers. The Mexican insurers paid the resulting claims and succeeded to each insured owner's rights to his or her stolen auto.[1] Meanwhile the fifty stolen autos made their way to Texas, where they were fraudulently titled and then resold in transactions with dealers in other states, including Florida.

Relying on vehicle identification numbers and other information supplied by the Mexican insurers through Interpol, the Florida Highway Patrol seized thirty-five of the stolen autos from various individuals and dealerships in Florida, including each of the nine defendants.[2] Next, the Mexican insurers negotiated directly with the Florida Highway Patrol in order to obtain the release of twenty of the thirty-five stolen autos. The Florida Highway Patrol

---

1. Presumably this occurred by operation of the insurance contract and Mexican subrogation law.

2. The complaint does not clearly describe the status of the remaining fifteen stolen autos. Paragraph 17 of the complaint alleges that the Florida Highway Patrol has "to date seized or caused to be seized approximately 50 stolen Mexican vehicles located in Florida and several sister states." However, paragraph 19 of the amended complaint alleges that only thirty-five are or were seized by the Florida Highway Patrol. This implies, but the Complaint does not affirmatively allege, that the remaining fifteen stolen autos are or were in the possession of various law enforcement agencies in other states, none of which are parties to the present action.

was concerned about others claiming an interest in the stolen autos. In consideration for the immediate return of twenty of the thirty-five stolen autos, the Mexican insurers executed twenty releases that required the Mexican insurers to hold harmless and defend the Florida Highway Patrol and its employees "from any claims, costs, attorney fees, or damage arising out of the aforementioned seizure of such [stolen] vehicle and the return of the vehicle..." Docket No. 1 at Exhibit B [the "releases"].

Subsequently, a number of individuals and dealers from whom Florida Highway Patrol had seized the thirty-five vehicles brought suit in state court for wrongful taking of their property. The actions were consolidated. Citing the releases, the Florida Highway Patrol demanded that the Mexican insurers assume its defense in that consolidated action. Docket No. 1 at Exhibit C.

The Mexican insurers continued to negotiate directly with the Florida Highway Patrol in an attempt to gain the release of the remaining fifteen stolen autos. The Mexican insurers, however, refused to execute further releases. Instead, the Mexican insurers filed the present action seeking declaratory relief, citing as a basis for relief the Convention Between the United States and the United Mexican States for the Recovery and Return of Stolen or Embezzled Vehicles and Aircraft [the "Convention"], signed January 15, 1981 [T.I.A.S. No. 10653].

Count I of the complaint seeks two-part declaratory relief against defendant Colonel Charles C. Hall, Commander of the Florida Highway Patrol. First, Count I seeks a declaration that the twenty (20) releases already executed by the Mexican insurers are void and unenforceable as violative of the Convention and for want of consideration (due to the pre-existing duties imposed on Hall by the Convention). Second, Count I seeks a declaration that Hall is not permitted to insist on execution of further releases as a condition of the release of the remaining fifteen (15) vehicles. Count II seeks a declaration of the Mexican insurers' superior title to the stolen autos as against the other named defendants and other parties.[3]

On January 5, 2000, defendant Car Store of Altamonte, Inc. filed its answer [Docket No. 6], its affirmative defenses [Docket No. 7], and motion to dismiss [Docket No. 8]. On the same date, plaintiffs filed an amended complaint. Docket No. 9. The amended complaint was substantially identical to the original complaint, except that it lacked the exhibits included with the original complaint. On January 25, 2000, Greater Orlando Auto Auction, Inc. filed its motion to dismiss [Docket No. 24] with a memorandum in support. Docket No. 25. On February 9, 2000, Charles C. Hall filed his motion to dismiss. Docket No. 28. On March 15, 2000, the Court heard argument on these motions. Docket No. 49. At the hearing, the Court granted the motion of the United Mexican States to file an *amicus* brief [Docket No. 51], and invited the United States to file an *amicus* brief as well. By order dated April 7, 2000, the Court granted the United States' motion to extend until May 4, 2000 its time to file an *amicus* brief. Docket No. 61. On May 4, 2000, the United States filed its *amicus* brief.

Both Orlando Executive Wholesale Inc.'s motion to dismiss [Docket No. 24] and

---

**3.** The scope of the relief requested by Count II is unclear for two reasons. First, the list of persons against whom the Mexican insurers seek a declaration of superior title appears to encompass more than the present defendants. Count II uses the defined term "the Wrongful Possessors," which is defined in paragraph twenty of the amended complaint as the plaintiffs in the state court action. However, the relief requested in Count II is not limited to the "Wrongful Possessors," but is instead directed at "persons such as the Wrongful Possessors." This language may be a request for *in rem* relief as against all present and future possessors. Even with respect to the "Wrongful Possessors," however, Count II is vague in that it fails to specify which particular vehicles each of the defendants is accused of wrongfully possessing.

Charles C. Hall's motion to dismiss [Docket No. 28] argue that this Court lacks federal subject-matter jurisdiction.[4] Orlando Executive Wholesale Inc.'s motion also asserts that this Court lacks diversity of citizenship jurisdiction. Charles C. Hall's motion is silent as to diversity jurisdiction but asserts defective service as to defendant Hall. At a preliminary pretrial conference on April 28, 2000, counsel for Hall stated on the record that this portion of Hall's motion to dismiss is moot, in light of plaintiff's counsel's oral representations.

## II. THE LAW

### A. Constitutional Basis of Federal Court Jurisdiction

■ Article III, Section 2 of the Constitution provides in relevant part as follows:

> The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—to all Cases affecting Ambassadors, other public ministers and Consuls;—to all Cases of admiralty and maritime Jurisdiction;—to Controversies to which the United States shall be a Party;—to Controversies between two or more States;—between a State and Citizens of another State;—between Citizens of different States;—between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.

Article III generally requires a federal court to satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case. *Ruhrgas AG v. Marathon Oil Company,* 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999). The court must inquire into its subject-matter jurisdiction on its own initiative. *Ruhrgas,* 526 U.S. at 583, 119 S.Ct. 1563.

### B. Diversity Jurisdiction under 28 U.S.C. § 1332

■ Section 1332 of Title 28 of the United States Code provides that:

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between -
>
> (1) citizens of different States;
>
> (2) citizens of a State and citizens or subjects of a foreign state;
>
> (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
>
> (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

The term "citizens or subjects of a foreign state" in section (a)(2) includes foreign corporations. *See, e.g., Bel–Bel International Corporation v. Community Bank of Homestead,* 162 F.3d 1101, 1107 (1998); *Maseda v. Honda Motor Company,* 861 F.2d 1248, 1254 (1988). In an action against multiple unrelated defendants, a plaintiff relying on § 1332 must satisfy the amount-in-controversy requirement with respect to each individual defendant, unless the defendants may be held jointly liable to the plaintiff. *Jewell v. Grain Dealers Mutual Insurance,* 290 F.2d 11, 13 (5th Cir.1961). Where the plaintiff seeks only injunctive and declaratory relief, the amount in controversy is measured by the value of the object of the litigation. *Ericsson GE Mobile Communications, Inc. v. Motorola Communications & Electronics,* 120 F.3d 216, 217 (1997). A reviewing court should not dismiss an action for failure to satisfy the amount-in-controversy requirement unless it appears to a "legal certainty" that plaintiff's claim is actually for less than the jurisdictional amount. *Broughton v. Flori-*

---

4. Although Orlando Executive Wholesale Inc. explicitly cites 28 U.S.C. § 1331, as well precedential authority, Hall's motion (for which no accompanying memorandum in support was filed) cites no authority other than the Convention.

da International Underwriters, Inc., 139 F.3d 861, 863 (11th Cir.1998).

### C. Declaratory Relief Under 28 U.S.C. § 2201

■ Section 2201(a) of Title 28 of the United States Code provides that:

In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

The Declaratory Judgment Act is procedural only. *Aetna Life Ins. Co. Of Hartford, Conn. v. Haworth,* 300 U.S. 227, 241, 57 S.Ct. 461, 81 L.Ed. 617 (1937). The requirements for a justiciable case or controversy are no less strict in a declaratory judgment proceeding than in any other type of suit. *Federation of Labor v. McAdory,* 325 U.S. 450, 461, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945). The asserted controversy must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. *Haworth,* 300 U.S. at 241, 57 S.Ct. 461.

### D. Federal Court Interpretation of Self–Executing Treaties

■ Article VI of the Constitution reads in relevant part as follows:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.

In an early case interpreting a treaty, Justice Marshall stated as follows:

A treaty is in its nature a contract between two nations, not a legislative act. It does not generally effect, of itself, the object to be accomplished, especially so far as its operation is infra-territorial; but is carried into execution by the sovereign power of the respective parties to the instrument. In the United States a different principle is established. Our constitution declares a treaty to be the law of the land. It is, consequently, to be regarded in courts of justice as equivalent to an act of the legislature, whenever it operates of itself without the aid of any legislative provision. But when the terms of the stipulation import a contract, when either of the parties engages to perform a particular act, the treaty addresses itself to the political, not the judicial department; and the legislature must execute the contract before it can become a rule for the Court.

*Foster v. Neilson,* 27 U.S. (2 Pet.) 253, 314, 7 L.Ed. 415 (1829), *overruled in part by U.S. v. Percheman,* 32 U.S. 51, 7 Pet. 51, 8 L.Ed. 604 (1833). The Restatement (Third) of Foreign Relations Law of the United States (1986) [the "Restatement"] follows a similar approach. Section 111 of the Restatement states in relevant part as follows:

(2) Cases arising under international law or international agreements of the United States are within the Judicial Power of the United States and, subject to Constitutional and statutory limitations and requirements of justiciability,

are within the jurisdiction of the federal courts.

(3) Courts in the United States are bound to give effect to international law and to international agreements of the United States, except that a "non-self-executing" agreement will not be given effect as law in the absence of necessary implementation.

Section 111(4) provides that an agreement is non-self-executing:

(a) if the agreement manifests an intention that it shall not become effective as domestic law without the enactment of implementing legislation,

(b) if the Senate in giving consent to a treaty, or Congress by resolution, requires implementing legislation, or

(c) if implementing legislation is constitutionally required.

A leading precedent of the pre-split Fifth Circuit [5] identified the following four factors as relevant to determining the self-executing nature of an agreement:

1.) the purposes of the treaty and the objects of its creators

2.) the existence of domestic procedures and institutions appropriate for direct implementation

3.) the availability and feasibility of alternative enforcement methods

4.) the immediate and long-range consequences of self- or non-self execution

*United States v. Postal,* 589 F.2d 862, 877 (5th Cir.1979), *citing People of Saipan v. United States Department of Interior,* 502 F.2d 90 (9th Cir.1974) [the *"Postal* factors"]. In discerning the intent of the parties to the treaty, the reviewing court "may look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties." *Postal,* 589 F.2d at 877, *citing Choctaw Nation of Indians v. United States,* 318 U.S. 423, 431–32, 63 S.Ct. 672, 87 L.Ed. 877 (1943). In particular, the views of the State Department "carry substantial weight." *Postal,* 589 F.2d at 883.

### E. *Private Causes of Action Under Treaties*

According to Comment (h) to § 111, "[w]hether a treaty is self-executing is a question distinct from whether the treaty creates private rights or remedies." [6] The Restatement recognizes a presumption, under certain circumstances, that a treaty is self-executing. Restatement § 111, Reporter's Note 5. However, neither the Restatement nor any judicial precedent recognizes a similar presumption with respect to whether a treaty creates a private right of action. On the contrary, there is generally the opposite presumption. *See* Restatement § 907, comment (a) ("[i]nternational agreements, even those directly benefitting private persons, generally do not create private rights or provide for a private cause of action in domestic courts ...."); *United States v. Li,* 206 F.3d 56, 67 (1st Cir.2000) (*en banc*).

---

**5.** In *Bonner v. City of Prichard,* the Eleventh Circuit declared that decisions of the former Fifth Circuit rendered prior to October 1, 1981 are binding on this Circuit. *See* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

**6.** The distinction drawn by Comment (h) to § 111 has not always been strictly applied in practice. As the thorough and perceptive *amicus* brief filed by the United States recognizes, "courts sometimes use the term 'self-executing' in a broad sense to refer to a treaty that *both* takes effect without implementing legislation *and* creates a private right of action ... These two questions, however, technically are distinct." Docket No. 72 at 11, n. 10. Decisions by both the Eleventh and the

Second Circuits appear to equate the issues of self-execution and a private right of action. *See Haitian Refugee Center, Inc. v. Baker,* 949 F.2d 1109, 1110 (11th Cir.1991) (noting parenthetically that "[a] 'self-executing' international agreement is one that directly accords enforceable rights to persons without the benefit of Congressional implementation.") (citing concurring opinion of Edwards, J., in *Haitian Refugee Center v. Gracey,* 809 F.2d 794 (D.C.Cir.1987)); *Columbia Marine Services, Inc. v. Reffet Ltd.,* 861 F.2d 18, 21 (in order for an action to arise under a treaty for purposes of 28 U.S.C. § 1331, "[t]he treaty must be self-executing, i.e., it must prescribe rules by which private rights may be determined.") (internal citation omitted).

### F. Standard of Review on Motion to Dismiss for Lack of Jurisdiction

A defendant may challenge the subject-matter jurisdiction of a federal district court either facially or factually. *R.B. McMaster v. United States*, 177 F.3d 936, 940 (11th Cir.1999), *citing Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir.1990). The two forms of attack differ substantially. *Dunbar*, 919 F.2d at 1529. A facial attack is an attack on the adequacy of the complaint to allege a basis of federal subject-matter jurisdiction. *McMaster*, 177 F.3d at 940. The non-movant is entitled to safeguards similar to those available in opposing a Rule 12(b)(6) motion. *Dunbar*, 919 F.2d at 1529. The reviewing court must take all of the allegations in the complaint as true. *Dunbar*, 919 F.2d at 1529.

A factual attack, by contrast, permits the reviewing court to consider evidence beyond the pleadings, such as testimony and affidavits. *Dunbar*, 919 F.2d at 1529. The non-movant does not enjoy the same safeguards as in the case of a facial attack. *Dunbar*, 919 F.2d at 1529. The reviewing court does not presume the truthfulness of the plaintiff's allegations in the complaint. *Dunbar*, 919 F.2d at 1529. The reviewing court also is not required to view all of the record evidence in the light most favorable to the non-movant. *Dunbar*, 919 F.2d at 1529. Instead, the court is free to review the evidence and satisfy itself as to its power to hear the case. *Dunbar*, 919 F.2d at 1529.

A factual attack may sometimes implicate an element of the plaintiff's cause of action. *Dunbar*, 919 F.2d at 1529. In such circumstances, the proper course is for the court to find that jurisdiction exists and to deal with the objection as a direct attack on the merits of the plaintiff's case. *Dunbar*, 919 F.2d at 1529, *citing Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.). This approach provides a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his or her claim. *Dunbar*, 919 F.2d at 1529. The movant is forced to proceed under Rule 12(b)(6) or Rule 56. *Dunbar*, 919 F.2d at 1529.

## III. APPLICATION AND ANALYSIS

All of the supporting and opposing briefs with respect to the two motions to dismiss, as well as the *amicus curiae* brief filed by the United Mexican States, frame the main issue for decision as follows: whether the Convention Between the United States and the United Mexican States for the Recovery and Return of Stolen or Embezzled Vehicles and Aircraft, signed January 15, 1981, [T.I.A.S. No. 10653] creates a private right of action that the Mexican insurers may pursue in this court. The *amicus* brief filed by the United States presents a different and more accurate analysis:

> While the parties frame the private-right-of-action issue as 'jurisdictional,' *see, e.g.,* OEW's motion to dismiss at pp. 3–5, it properly is analyzed as whether plaintiffs can state a valid cause of action.... Under either analysis, the result, of course, is the same: the plaintiffs' claim under the Convention cannot go forward.

Docket No. 72 at 10, n. 9.

The Court agrees with the government. The Court first examines the matter of its Constitutional and statutory jurisdiction. The Court determines that, because the Convention is self-executing, the Court has jurisdiction under Article III to construe the terms of the Convention. The Court also determines that, for purposes of the present analysis, diversity jurisdiction under § 1332 exists with respect to each defendant. Finally, the Court accepts the invitation (explicit in the case of the United States, and implicit as to the other parties) to reach the issue of whether the Convention creates a private right of action, and finds that the Convention does not. The Court does not have federal question jurisdiction.

## 1380

### A. The Convention is Self-Executing

In determining whether the Convention is self-executing, the Court considers the application of the four *Postal* factors:

1.) the purposes of the treaty and the objects of its creators

2.) the existence of domestic procedures and institutions appropriate for direct implementation

3.) the availability and feasibility of alternative enforcement methods

4.) the immediate and long-range consequences of self- or non-self execution

The Court discusses the application of each of these factors in turn.

■■■ Both the legislative history adduced by the plaintiffs and the *amicus* briefs field by the United States and the United Mexican States clearly reflect the intent of both parties that the Convention be self-executing. The Report of the Senate Committee on Foreign Relations accompanying the Convention explicitly states that "[n]o new legislation will be needed to implement the Convention." Docket No. 54 at 2. The United States' *amicus* brief (which, under *Postal* "carr[ies] substantial weight") states that "[t]he United States agrees that, as a self-executing treaty, the Convention can be interpreted by courts, and given the force and effect of federal law." Docket No. 72 at 11.

The plain language of the Convention clearly contemplates the existence of domestic procedures and institutions appropriate for direct implementation. The Convention refers in numerous instances to, and imposes obligations on, not only the signatory nations, but also the "Authority of the Requested State having custody of the vehicles." The United States' *amicus* brief acknowledges that the addition of such direct obligations for domestic institutions was one of the primary perceived advantages of the present Convention over its 1936 predecessor. Docket No. 72 at 3.

With respect to the availability and feasibility of alternative enforcement methods and the immediate and long-range consequences of self- or non-self execution, the legislative history clearly demonstrates that the consequence of finding the Convention non-self-executing would be a return to the prior regime that both parties to the 1936 Convention found unsatisfactory. The Report of the Senate Committee on Foreign Relations accompanying the Convention states that "from the U.S. perspective, a primary reason for renegotiating the 1936 Convention was to improve the prospects for the speedy return of motor vehicles and aircraft stolen or embezzled in the United States and brought into Mexico since that Convention has not always proven effective in facilitating their easy and prompt return." Docket No. 54 at 2. As the United States' *amicus* brief further explains, "[t]he earlier [1936] agreement's terms, however, were general, and it failed to impose certain obligations on seizing authorities." Docket No. 72 at 3. Clearly, a finding that the present Convention is not self-executing would render it at least as anemic and precatory as its 1936 predecessor.

### B. Diversity Jurisdiction

■■■ Orlando Executive Wholesale Inc.'s argument that this Court lacks diversity jurisdiction is two-fold. First, Orlando Executive Wholesale Inc. asserts that because the amended complaint seeks only declaratory relief, it cannot possibly satisfy the $75,000 amount-in-controversy requirement of § 1332. This argument is directly contrary to the clear law of the Eleventh Circuit that where the plaintiff seeks only injunctive and declaratory relief, the amount in controversy is measured by the value of the object of the litigation. *Ericsson GE Mobile Communications, Inc. v. Motorola Communications & Electronics*, 120 F.3d 216, 217 (1997).

Orlando Executive Wholesale Inc.'s second argument is that none of the plaintiffs satisfy the amount in controversy requirement against any single defendant, including Orlando Executive Wholesale Inc. Orlando Executive Wholesale Inc.'s argument

is correct in its assertion that the plaintiffs must satisfy the amount-in-controversy requirement as to each individual defendant, unless the defendants may be held jointly liable to the plaintiff.

As previously noted, the amended complaint fails to identify which defendants "wrongfully possess[ed]" which vehicles. However, in its memorandum in opposition to Orlando Executive Wholesale Inc.'s, the Mexican insurers avers that Orlando Executive Wholesale Inc. claims ownership rights to eleven (11) of the stolen autos. Docket No. 30 at 6. The memorandum goes on to identify four (4) of these autos and asserts that their combined NADA "Blue Book" value is $80,725.

The memorandum does not provide a similar identification or valuation for any other vehicles other than to assert that "[t]he Court's decree or declaration of rights on this issue will determine the respective parties' rights to at least 15 motor vehicles having a market value of over $300,000." As discussed below, the Convention provides no basis for this broad request for what amounts to *in rem* relief raises significant standing concerns. However, with respect to the amount in controversy issue, the Court should not dismiss an action for failure to satisfy the amount-in-controversy requirement unless it appears to a "legal certainty" that plaintiffs' claims are actually for less than the jurisdictional amount. *Broughton,* 139 F.3d at 863. Diversity jurisdiction appearing on the present record, Orlando Executive Wholesale Inc.'s motion to dismiss for lack of diversity jurisdiction should be DENIED without prejudice to the right of Orlando Executive Wholesale Inc. or any other defendant to reassert a lack of diversity jurisdiction (such as upon summary judgment) should it appear after further discovery has been conducted.

### C. *The Convention Creates No Private Right of Action*

The Mexican insurers argue that, because the Convention is self-executing, it necessarily creates a private right of action (though they do not explain what rights would be enforceable or what the private cause of action would be). Given the plain language of the Convention, this is neither a necessary, nor even a plausible, conclusion. Although the Convention creates an extensive procedural framework for the return of stolen vehicles, all of the procedural prerequisites are to be discharged through diplomatic channels.

Article III establishes procedures for requesting the return of seized property through diplomatic channels. For example, for seized automobiles, a request for return must be submitted by a "consular officer of the Requesting State to the Authority of the Requested State having custody of the vehicle." Convention, Article III(1). Moreover, the request must be submitted "under seal of the consular office," in the language of the Requested State, and a copy must be transmitted "under cover of a note to the foreign ministry of the Requested State." Convention, Article III(1). A consular officer may not make a request until he or she receives certain listed documents (properly notarized) evidencing ownership of the vehicle. Convention, Article III(1)(a).

Article VII explicitly states that "[d]isputes arising as to the application of this Convention shall be settled through diplomatic channels." The only role that the Convention recognizes for the owner of the stolen property is to provide the documents and evidence of title necessary to commence the process for making a formal diplomatic requested under the Convention. The Convention also allows the owner to take possession of the stolen property, if and when returned. Convention, Article IV(3) and V. However, nothing in the Convention can be read to allow the owner unilaterally to demand such return without diplomatic fulfillment of procedural prerequisites, let alone to assert a private right of action in a federal court.

### D. *Conclusion*

The amended complaint seeks two forms of "declaratory" relief based upon

the Convention. Count I is a claim, asserted directly under the Convention, that the Mexican insurers hold superior title to the stolen autos and that defendant Hall's requirement of releases is illegal. The Convention creates no private right of action and cannot serve as the basis for this relief—*i.e.* the Convention does not void the releases and does not confer on the Mexican Insurers superior title to the automobiles. No such federal claim exists as a matter of law, and Count I should be dismissed for failure to state a claim upon which relief may be granted.[7]

■■■ Count II of the amended complaint seeks declaratory relief, but relies only indirectly on the Convention. Specifically, Count II of the amended complaint requests a declaration as to the invalidity of the twenty releases executed by the Mexican insurers. Count II thus posits the Convention as a defense to enforcement of the twenty releases by declaratory defendant (and would-be plaintiff) Charles C. Hall, but does not posit the Convention as the basis of jurisdiction. The use of the Convention as a federal defense to a state law cause of action is clearly inadequate to support federal question jurisdiction under § 1331. *See City of Huntsville v. City of Madison*, 24 F.3d 169, 172, n. 4 (11th Cir.1994). However, based on the current record, the Court cannot conclude that jurisdiction under § 1332 (for a garden-variety replevin/contract/indemnity action) also fails. Diversity jurisdiction appearing from the present record, Orlando Executive Wholesale Inc.'s motion to dismiss for lack of diversity jurisdiction should be DENIED without prejudice to the right of any defendant to assert an absence of diversity jurisdiction at a later stage (such as upon summary judgment) after further discovery has been conducted. For the foregoing reasons, it is

**RECOMMENDED** that defendant Orlando Executive Wholesale Inc.'s Motion to Dismiss [Docket No. 24] filed January 25, 2000 should be GRANTED in part, to the extent that the amended complaint fails to invoke this Court's federal question jurisdiction and fails to state a claim upon which relief may be granted under the Convention, and DENIED to the extent that the amended complaint adequately alleges this Court's jurisdiction under 28 U.S.C. § 1332.

**FURTHER RECOMMENDED** that defendant Charles C. Hall's Motion to Dismiss [Docket No. 28] filed February 9, 2000 should be **GRANTED** in part, to the extent that the amended complaint fails to invoke this Court's federal question jurisdiction and fails to state a claim upon which relief may be granted under the Convention, and DENIED as moot as to the argument that plaintiffs failed to effect proper service on defendant Charles C. Hall.

**FURTHER RECOMMENDED** that the amended complaint should be **DISMISSED** for failure to state a claim upon which relief may be granted, without prejudice to plaintiffs' right to file a second amended complaint under state law within twenty (20) days of the date of this Report and Recommendation, or of any order affirming, adopting or resolving this Report and Recommendation.

Failure to file and serve written objections to the proposed findings and recommendations in this report, pursuant to 28 U.S.C. § 636(b)(1)(B) and (e) and Local Rule 6.02, within ten days of the date of its

---

7. The issue of whether the Convention creates a private cause of action under federal law (and voids the releases and confers title to the automobiles) can be viewed through three slightly different lenses—1.) federal question jurisdiction under 28 U.S.C. § 1331 (civil action arising under a treaty of the United States); 2.) failure to state a claim upon which relief may be granted under Fed. R.Civ.P. 12(b)(6); and 3.) declaration of rights and legal relations under 28 U.S.C. § 2201. The motions to dismiss filed by Orlando Executive Wholesale Inc. and Charles C. Hall ask the Court to resolve the issue of whether a private right of action exists only in the context of federal question jurisdiction. Nevertheless, a resolution in the context of federal question jurisdiction is also a resolution under Rule 12(b)(6) and § 2201.

filing shall bar an aggrieved party from a de novo determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.

June 20, 2000.