**Dolcie LAWRENCE, Plaintiff–Appellant,**

v.

**Peter DUNBAR, United States of America, Defendants–Appellees.**

No. 89–6248
Non–Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Dec. 27, 1990.

---

David L. Kout, Miami, Fla., for plaintiff-appellant.

Dexter Lehtinen, U.S. Atty., Barbara K. Bisno, Dawn Bowen, Linda Collins Hertz, Asst. U.S. Atty., Miami, Fla., for defendants-appellees.

Before CLARK and COX, Circuit Judges, and HILL, Senior Circuit Judge.

PER CURIAM:

This case arises from a collision between two automobiles, one driven by an employee of the United States Government and the other driven by the plaintiff, Dolcie Lawrence. Lawrence appeals the dismissal for lack of subject matter jurisdiction of her suit brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671 et seq. We reverse and remand.

FACTS

In December 1987, defendant Peter Dunbar was a Border Patrol Agent with the United States Immigration and Naturalization Service ("INS"), stationed in Miami, Florida. At the time, Dunbar was assigned to "Operation Greenback," an interagency task force which included both the INS and the United States Drug Enforcement Administration ("DEA"). As part of his assignment with Operation Greenback, Dunbar was allowed to use an unmarked government vehicle on a 24–hour basis for commuting to and from work and in connection with his work assignments with the task force.

The INS conducted an internal investigation concerning the event that is the subject of this lawsuit. That investigation included an administrative hearing held in February 1988. From the transcript of that hearing, which is a part of the record on appeal, R–13–Exh.III[1], the following facts may be gleaned. On December 11, 1987, Dunbar's assigned government vehicle was a 1985 Nissan Maxima. According to his Border Patrol Activity and Time Report for that week, Dunbar began work that day at 6:00 a.m. Dunbar testified that on December 11, 1987, he "came on the radio" around 5:00 a.m., on his way to the station. He was scheduled to testify at a bond hearing at 10:00 a.m. The hearing ran late and Dunbar did not return to Operation Greenback headquarters until around 1:30 p.m. Dunbar had planned to go out on surveillance that afternoon, but changed his plans because the bond hearing ran late. Instead, after he returned to Operation Greenback headquarters, he went downstairs to the office Christmas party, where he had something to eat and also consumed alcoholic beverages. Dunbar said that he then went upstairs and wrote up some notes about the court hearing.

Around 3:30 or 4:00 p.m., Dunbar left Operation Greenback headquarters and drove to a Christmas party under way at DEA headquarters. Dunbar remained at the DEA party for several hours, where he consumed more alcoholic beverages. Shortly before 10:00 p.m., Dunbar left the DEA party driving the 1985 Nissan Maxima assigned to him. Around 10:30 p.m., the car he was driving was involved in a car wreck with the plaintiff's automobile. Dunbar was charged with two motor vehicle offenses, one of which was drunken driving.

Dunbar's Border Patrol Activity and Time Report and his Time and Attendance Report were discussed at the INS administrative investigation hearing. Dunbar confirmed that those reports accurately reflect the hours he worked that day. The transcript reveals that Dunbar worked from 6:00 a.m. to 10:45 p.m. on the day of the accident, earning 8 hours regular pay time and 8.75 overtime pay hours for a total of 16.75 hours.

1. References to the record indicate first, tab number and second, either page or exhibit number.

Plaintiff's written claim for damages resulting from this accident was submitted to the INS and denied by letter dated October 27, 1988. Lawrence then sued Dunbar and the INS in February 1989, alleging that Dunbar was acting within the course and scope of his employment with defendant INS when he negligently struck her car with the 1985 Maxima he was operating the night of the accident, seeking damages for personal injuries and property damage. Dunbar answered *pro se* and stated that he was without knowledge of several allegations of his negligence and the plaintiff's injuries. Dunbar admitted, however, that at all times referred to in the complaint, he was acting within the course and scope of his employment with INS, that the INS owned the 1985 Maxima involved in the wreck, and that he drove the car with the consent and permission of the INS.

The INS filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), contending that the district court lacked subject matter jurisdiction under the FTCA because Dunbar was not acting within the scope of his employment as a government employee at the time of the accident alleged in the complaint.[2] Attached to this motion were three exhibits. First, an affidavit by Marshall M. Metzgar, the Border Patrol's Chief Patrol Agent for the Miami Sector and Dunbar's senior supervising official, expressing the opinion that at the time of Dunbar's vehicle accident on December 11, 1987, he was "not acting in the performance or pursuit of the mission of the United States Border Patrol." R–13–Exh.I. Second, the Miramar, Florida, Police Department report of the accident and Dunbar's arrest. Third, a transcript of the previously mentioned administrative investigation hearing that took place on February 19, 1988.

In granting the INS's motion to dismiss, the district court relied almost exclusively on the Metzgar affidavit. The court quoted from this affidavit, noting that " 'Mr. Dunbar's attendance at the DEA party was not required or necessary to the performance of his duties as a government employee.' " The opinion continued,

> In response to Defendant's allegations that DUNBAR was not acting within the scope of his employment, Plaintiff points first to DUNBAR's Answer (DE 10) in which DUNBAR admits the allegation in Paragraph 5 of the Complaint, which states that DUNBAR was "acting within the course and scope of his employment with Defendant, U.S.I.N.S." (DE 1). Plaintiff also relies on DUNBAR's statement (DE 13, Exhibit III, pg. 9), in which DUNBAR states that he was on the time clock with I.N.S. from 2:00 p.m. until 10:45 p.m. Lastly, Plaintiff relies on the accident report (DE 13, Exhibit III), which reveals that the accident occurred at 10:35 p.m.

> In order for the court to find that DUNBAR's conduct was within the scope of his employment, Plaintiff must establish all three of the elements articulated by the court in *Rabideau [v. State,* 391 So.2d 283 (Fla. 1st Dist.Ct.App.1980), *aff'd,* 409 So.2d 1045 (Fla.1982)]. *Rabideau* at 284. Plaintiff must show that: (1) DUNBAR's conduct was the kind he was employed to perform; (2) DUNBAR's conduct occurred substantially within the time and space limits of his employment; and (3) DUNBAR's conduct was activated at least in part by a purpose to serve the master. The most persuasive evidence presented on the first element is the Affidavit of Marshall M. Metzgar (DE 13, Exhibit I). Mr. Metzgar unequivocally stated that, "Mr. Dunbar's attendance at the DEA party was not required or necessary to the performance of his duties as a government employee." Plaintiff has not refuted this statement with any evidence which the court finds convincing. Thus, Plaintiff has not satisfied one of the elements necessary to prove that DUNBAR was

---

**2.** The INS also moved for dismissal because of the plaintiff's failure to name the United States as the proper party defendant, as is required by the Federal Tort Liability Act. The plaintiff then moved to amend her complaint to correct this technical pleading defect. The district court granted this motion, *nunc pro tunc,* when it granted the INS's motion to dismiss.

acting within the scope of his employment.

Slip op. at 7–8 (October 2, 1989).

## DISCUSSION

Title 28, section 1346(b) of the United States Code states in part:

> [T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

■ State law, therefore, governs the question of whether the United States has waived its sovereign immunity against liability for the acts complained of by the plaintiff. *Brooks v. A.R. & S. Enterprises, Inc.*, 622 F.2d 8, 10 (1st Cir.1980); *Hubsch v. United States*, 174 F.2d 7, 9 (5th Cir. 1949), *cert. dismissed*, 340 U.S. 804, 71 S.Ct. 35, 95 L.Ed. 590 (1950).[3] Unless, according to the law of Florida, the United States could be liable for this alleged tort of its employee if it were a private person, then not only is the sovereign's immunity intact, but the district court is without subject matter jurisdiction and must dismiss the suit. *Cf., United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058 (1941) ("The United States, as sovereign, is immune from suit save as it consents to be sued ..., *and the terms of its consent to be sued in any court defines that court's jurisdiction to entertain the suit*.") (emphasis added). *See also Bor–Son Bldg. Corp. v. Heller*, 572 F.2d 174 (8th Cir.1978) (discussing this legal axi-

om in the context of a Federal Tort Claims Act suit).[4]

Because the extent of the United States' waiver of immunity from suit is defined, in cases such as this, by reference to state tort law, proof of scope of employment serves two purposes: it is a necessary predicate to the court's subject matter jurisdiction and it is an element the plaintiff must establish to win the case, just as if the defendant were a private party. *See, e.g., Bettis v. United States*, 635 F.2d 1144, 1146–47 (5th Cir.Unit B 1981);[5] *Borrego v. United States*, 790 F.2d 5 (1st Cir.1986). Under Florida law, scope of employment is determined according to a three part test:

> An employee's conduct is within the scope of his employment only if it is the kind he is employed to perform, it occurs substantially within the time and space limits of the employment and it was activated at least in part by a purpose to serve the master.

*Rabideau v. State*, 391 So.2d 283 (Fla. 1st Dist.Ct.App.1980), *aff'd*, 409 So.2d 1045 (Fla.1982).

The district court applied this test when it decided the INS's motion to dismiss and held that Dunbar was not acting within the scope of his employment at the time of the accident. The INS contends that we should apply the clearly erroneous standard of review to the jurisdictional facts found by the district court and affirm the dismissal. The plaintiff urges us to apply the abuse of discretion standard of review and hold that the court erred in dismissing the case based on the existing record and before the plaintiff had an opportunity to engage in meaningful discovery. We conclude that the district court did not apply the correct standard in deciding the motion to dismiss for lack of subject matter jurisdiction.

■ Attacks on subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) come in

---

**3.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

**4.** The *scope* of federal liability, of concern only after the fact of consent to be sued, and there-

fore jurisdiction, is established, is set forth at 28 U.S.C. § 2674.

**5.** In *Stein v. Reynolds Sec. Inc.*, 667 F.2d 33, 34 (11th Cir.1982), this court adopted as binding precedent all decisions of Unit B of the former Fifth Circuit.

two forms. "Facial attacks" on the complaint "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.), *cert. denied*, 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977)). "Factual attacks," on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.*

These two forms of attack differ substantially. On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion—the court must consider the allegations of the complaint to be true. *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). But when the attack is factual,

> the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction— its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Id.* at 412–13 (quoting *Mortensen*, 549 F.2d at 891). The attack in this case is factual.

The *Williamson* court discussed the standard by which a district court should decide factual attacks on subject matter jurisdiction when the defendant's attack also implicates an element of the cause of action:

> [T]he proper course of action for the district court ... is to find that jurisdiction exists and deal with the objection as

a direct attack on the merits of the plaintiff's case.... Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits. This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides, moreover, a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) ... or Rule 56 ... both of which place great restrictions on the district court's discretion.... [A]s a general rule a claim cannot be dismissed for lack of subject matter jurisdiction because of the absence of a federal cause of action. The exceptions to this rule are narrowly drawn, and are intended to allow jurisdictional dismissals only in those cases where the federal claim is clearly immaterial or insubstantial.

*Id.* at 415–16.

In *Eaton v. Dorchester Development, Inc.*, 692 F.2d 727 (11th Cir.1982), this court reversed the district court's dismissal, on a Rule 12(b)(1) motion, of the complaint based on a factual attack on subject matter jurisdiction and remanded for further discovery of jurisdictional facts. The court determined that jurisdiction was "inextricably intertwined" with the merits of the lawsuit, since a decision on one would effectively decide the other. *Id.* at 734. *See also Chatham Condominium Ass'n v. Century Village, Inc.*, 597 F.2d 1002, 1011-6r (5th Cir.1979) (stating that "the jurisdictional issues [in such a case] should be referred to the merits, for it is impossible to decide one without the other.").

And so it is here. The existence of plaintiff's cause of action depends on whether Dunbar was acting within the course and scope of his employment. The pertinent inquiry will resolve both the question of subject matter jurisdiction and a necessary element of the tort claim. The district court attempted to resolve this disputed factual matter largely on the basis of Metzgar's affidavit, without the benefit of further jurisdictional discovery or an eviden-

tiary hearing.[6] We question the admissibility of much of the testimony and opinion contained in Metzgar's affidavit. Metzgar attended neither of the Christmas parties in question. He based his opinion that Dunbar was not acting within the course and scope of his employment on his review of the report of investigation and "related evidence, ... documents and representations of Mr. Dunbar...." Affidavit of Marshall M. Metzgar, R–13–Exh.I. Because Mr. Metzgar lacked personal knowledge of many of the key events in this case, his affidavit with regard to those events does not support a dismissal. *See* Fed.R.Evid. 602 and Fed.R.Civ.P. 56(e).

■ At the very least, there are conflicting factual inferences that could be drawn from the facts before the court about whether Dunbar was acting within the scope of his employment when he attended the Christmas parties and afterwards was involved in the automobile accident. *See Impossible Electronics Techniques, Inc. v. Wackenhut Protective Sys. Inc.*, 669 F.2d 1026, 1031 (5th Cir.Unit B 1982) ("Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts.... If reasonable minds might differ on the inferences arising from disputed facts, then the court should deny summary judgment.").

■ The usual standard of reviewing a district court's findings of jurisdictional facts is the clearly erroneous standard. *See Eaton v. Dorchester Development, Inc.*, 692 F.2d 727, 732 (11th Cir.1982); *Giardiello v. Balboa Ins. Co.*, 837 F.2d 1566, 1567 n. 1 (11th Cir.1988); *Williamson*, 645 F.2d at 413. This standard of appellate review, however, gives inadequate regard to the realities of such an attack when the jurisdictional basis of a claim is intertwined with an element of the cause of action because, in those cases, the attack on jurisdiction is also an indirect attack on the merits. When the jurisdictional basis of a claim is intertwined with the merits, the district court should apply a Rule 56 summary judgment standard when ruling on a motion to dismiss which asserts a factual attack on subject matter jurisdiction. *See Williamson*, 645 F.2d at 415–16. Our review is therefore plenary.

Here, as in *Eaton*, the plaintiff has made "a fairly substantial showing of subject matter jurisdiction." *Eaton*, 692 F.2d at 734. Since the INS's motion was functionally an indirect attack on the merits of the plaintiff's claim, we conclude that "it is incumbent upon the trial judge to demand less in the way of jurisdictional proof than would be appropriate at a trial stage." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 892 (3d Cir.1977). Furthermore, since we adopt a summary judgment standard in evaluating Rule 12(b)(1) motions that also implicate the merits of a claim, the full panoply of protections afforded the party opposing such a motion will apply here.

Accordingly, we VACATE the district court's dismissal for lack of subject matter jurisdiction[7] and REMAND for further proceedings consistent with this opinion. We express no opinion on the merits of the plaintiff's claim. We simply hold that under the law of this circuit, *see Eaton* and

---

6. The parties dispute whether discovery was complete at the time the district court issued its order of dismissal under Rule 12(b)(1) on October 2, 1989. The Joint Proposed Scheduling Order indicates that time remained before the close of discovery. R–29–2. The plaintiff represents that she had not received Dunbar's employment records, which were necessary to depose him adequately. Brief of Appellant at 11.

7. Our holding in this case does not mean that a district court can never dismiss a federal claim for lack of subject matter jurisdiction whenever a decision on subject matter jurisdiction also implicates the substantive merits of the claim.

Where the plaintiff's claims are "clearly immaterial, made solely for the purpose of obtaining jurisdiction or are wholly unsubstantiated and frivolous," *Eaton*, 692 F.2d at 734, the court should dismiss the claim. *See Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *see also Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507 (5th Cir.), *cert. denied*, 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980) (dismissal of plaintiff's 42 U.S.C. § 1983 suit for lack of subject matter jurisdiction affirmed where the state action that was alleged was wholly unconvincing).

*Williamson,* federal claims should not be dismissed on motion for lack of subject matter jurisdiction when that determination is intermeshed with the merits of the claim and when there is a dispute as to a material fact.