**Brenda P. BROWN, Plaintiff,**

v.

**CRANFORD TRANSPORTATION SERVICE, INC., Defendant.**

**No. CIV.A.1:01–CV1947BBM.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Dec. 3, 2002.

Lynn C. Stewart, Jason Wayne Graham, Schreeder Wheeler & Flint, Atlanta, GA, for Brenda P. Brown, plaintiff.

Ronald Kyle Woods, Office of R. Kyle Woods, Atlanta, GA, for Cranford Transportation Service, Inc., defendant.

## *ORDER*

MARTIN, District Judge.

This action, alleging discharge in violation of the Family and Medical Leave Act of 1993, is before the court on Brenda P. Brown's motion to file original discovery [Doc. No. 18–1] and Cranford Transportation Service, Inc.'s motion for summary judgment [Doc. No. 21–1].

### I. *Factual and Procedural Background*

On July 24, 2001, the plaintiff, Brenda P. Brown ("Brown"), filed suit in this court against her former employer, Cranford Transportation Service, Inc. ("Cranford"). In the complaint, Brown alleges that Cranford, a family-owned trucking business, terminated her employment in violation of the Family and Medical Leave Act of 1993 ("FMLA") when she requested leave to care for her terminally ill husband. On September 24, 2001, Cranford answered Brown's complaint, asserting a variety of defenses. Specifically, Cranford denies that Brown was fired due to a request for leave under the FMLA; instead, Cranford asserts that Brown's termination stemmed from failure to perform job responsibilities. Also, Cranford denies that it employed enough people to qualify as an employer under the FMLA.

In its trucking business, Cranford has two distinct types of employees. First,

Cranford hires and utilizes regular employees. These people are paid either salaries or hourly wages each week. As such, they appear on Cranford's employee payroll documentation. Second, Cranford uses a number of owner/ operators to move freight. These owner/ operators own their own vehicles, but haul freight under Cranford's operating authority and insurance. Some owner/ operators lease their vehicles to Cranford, and all owner/ operators are paid on a weekly basis for services performed days earlier. However, Cranford maintains separate payroll records and documentation for its owner/ operators.

After several months of discovery, including two extensions of time, Cranford filed a motion for summary judgment. Importantly, Cranford argues that this court lacks subject matter jurisdiction to adjudicate the dispute. Cranford bases this assertion on the definition of "employer" under the FMLA. According to Cranford, during the statutory period applicable to this case, it did not employ fifty or more people. Because it did not employ the requisite number of people, Cranford argues it is not an "employer" under the FMLA, and summary judgment should be granted in its favor because the court lacks subject matter jurisdiction. Contrary to Cranford's conclusion, Brown, evaluating the same payroll data and documentation, asserts that Cranford employed the requisite number of people during the applicable period.

To foster the court's understanding of the subject matter jurisdiction controversy in this case, the court held a hearing on November 25, 2002. Each party was given a chance to explain the methodology it utilized to determine the number of workers employed by Cranford during the applicable period. With the aid of the parties' explanations, the court now resolves the subject matter jurisdiction issue.

## II. *Legal Standard*

### A. *Attacks on Subject Matter Jurisdiction*

The Eleventh Circuit has recognized that "[a]ttacks on subject matter jurisdiction come in two forms: (1) facial attacks, and (2) factual attacks." *Scarfo v. Ginsberg,* 175 F.3d 957, 960 (11th Cir.1999) (citing *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir.1990)). Facial attacks "require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the complaint are taken as true for the purposes of the motion." *Scarfo,* 175 F.3d at 960 (quoting *Lawrence,* 919 F.2d at 1529). In contrast, factual attacks challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered. *Scarfo,* 175 F.3d at 960. In a factual attack upon the court's subject matter jurisdiction, where the elements of the underlying cause of action are not implicated,[1] no presumption of truthfulness

---

1. The Eleventh Circuit recognizes that a different standard applies to a district court's review of subject matter jurisdiction "[w]hen the jurisdictional basis of a claim is intertwined with the merits." *Lawrence,* 919 F.2d at 1530. Where the subject matter jurisdiction issue implicates an element of the cause of action, "the district court should apply a Rule 56 summary judgment standard when ruling on a motion to dismiss which asserts a factual attack on subject matter jurisdiction."

*Id.; see also Garcia v. Copenhaver, Bell & Assocs.,* 104 F.3d 1256 (11th Cir.1997). Cranford's arguments presented to this court are similar to those presented in *Scarfo v. Ginsberg,* as the court must ascertain whether Cranford constitutes an "employer" under the FMLA. 175 F.3d at 961. As such, Cranford's "status as [an employer] in this case does not implicate an element of the [FMLA] cause of action." *Id.* However, while the court feels constrained to apply the standard articulated

attaches to a plaintiff's allegations, as under a 12(b)(6) motion to dismiss, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *Id.* at 960–61. Instead, the plaintiff bears the burden of proving to the court that jurisdiction in fact exists. *United States v. Tinoco,* 304 F.3d 1088, n. 18 (11th Cir.2002) (stating that, to establish subject matter jurisdiction, "the plaintiff must demonstrate that the defendant fits within [Title VII's] definition of 'employer' "); *Paterson v. Weinberger,* 644 F.2d 521 (5th Cir.1981) (holding that plaintiff "has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction"); *Dillard v. Jones,* 89 F.Supp.2d 1362, 1368 (N.D.Ga.2000) (Forrester, J.) (stating that plaintiff must establish subject matter jurisdiction).

■ Cranford's status as an employer under the FMLA is a threshold jurisdictional issue that does not implicate the elements of the plaintiff's cause of action. *Wascura v. Carver,* 169 F.3d 683, 685 (11th Cir.1999); *Scarfo v. Ginsberg,* 175 F.3d 957, 961 (11th Cir.1999) (holding that a defendant's status as an "employer" under Title VII "does not implicate an element of the Title VII cause of action"). In *Wascura v. Carver,* the Eleventh Circuit held that "where a defendant in an FMLA suit does not meet the statutory definition of 'employer,' there is no federal subject matter jurisdiction over the claim against that defendant." 169 F.3d at 685. If a court "were to exercise jurisdiction where the employer does not meet the statutory prerequisite, it would effectively be expanding the scope of the [FMLA]." *Id.* (quoting *Douglas v. E.G. Baldwin & Assocs., Inc.,* 150 F.3d 604, 608 (6th Cir.1998)). The

Eleventh Circuit compared this holding to its decisions under Title VII, stating that "[t]his conclusion comports with our previous holding that the question whether a defendant meets the definition of 'employer' under Title VII determines if there is subject matter jurisdiction over that claim." *Wascura,* 169 F.3d at 685. Accordingly, the court must independently determine if Cranford had the requisite number of employees before the court may evaluate the merits of the case. *Id.*

**B. *Definition of Employer Under the FMLA***

The FMLA provides that "any employer" who interferes with or denies any rights provided to an employee under the act is liable for damages. 29 U.S.C. § 2617(a) (1999). As such, plaintiffs may only assert claims against entities fitting the definition of "employer" in section 2611(4)(A). According to section 2611(4)(A)(i), "[t]he term 'employer'... means any person ... who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." *See also* 29 C.F.R. § 825.104 (2002).

In order to determine how many employees an employer has for purposes of the FMLA, the court refers to the Department of Labor's FMLA regulations. 29 C.F.R. §§ 825.100–.800 (2002). Pursuant to these regulations, the court is to apply the "payroll method" in assessing whether an entity "employs 50 or more employees for each working day during each of 20 or more calendar workweeks." 29 U.S.C. § 2611(4)(A)(i); *see also Walters v. Metro. Educ. Enters., Inc.,* 519 U.S. 202, 207, 117 S.Ct. 660, 136 L.Ed.2d 644 (1997); S.Rep.

in *Scarfo,* the court notes the seemingly contradictory precedent in *Garcia,* 104 F.3d at 1256.

No. 103–3, at 21–22 (1993). Following the payroll method, "[a]ny employee whose name appears on the employer's payroll will be considered employed each working day of the calendar week, and must be counted whether or not any compensation is received." 29 C.F.R. § 825.105(b). Further, "[e]mployees on paid or unpaid leave ... are counted as long as the employer has a reasonable expectation that the employee will later return to active employment." *Id.* at § 825.105(c). "Part-time employees, like full-time employees, are considered to be employed each working day of the calendar week, as long as they are maintained on the payroll." *Id.* However, "[i]f there is no employer/ employee relationship (such as when an employee is laid off, whether temporarily or permanently) such individual is not counted." 29 C.F.R. § 825.105(c); *see also Walters*, 519 U.S. at 211, 117 S.Ct. 660; *Laurie v. Ala. Ct. of Crim.App.*, 256 F.3d 1266, 1268–69 (11th Cir.2001). Finally, "[a]n employee who does not begin to work for an employer until after the first working day of a calendar week, or who terminates employment before the last working day of a calendar week, is not considered employed on each working day of that calendar week." *Id.* at § 825.105(d); *see also Walters*, 519 U.S. at 208–11, 117 S.Ct. 660.

## III. *Application to Cranford Transportation Service, Inc.*

■ When Cranford moved for summary judgment asserting that the court lacks subject matter jurisdiction, Cranford made a factual attack on the court's power to adjudicate this dispute.[2] Since the defendant's status as an "employer" does not implicate an element of Brown's cause of action against Cranford, the court "serves as the fact-finder and may weigh the evidence." *Scarfo*, 175 F.3d at 961.

■ In its motion for summary judgment, Cranford readily admits that, if its owner/operators are counted as employees,[3] the trucking company employed more than fifty people during the last twelve weeks of 2001. Cranford reached this conclusion after Pamela Parris, Cranford's human resources director and payroll manager, reviewed the company's payroll records for 2000 and 2001. She created a chart summarizing the number of employees working for Cranford each week and testified that, if the owner/ operators are counted as employees, Cranford had fifty or more employees during only twelve weeks in 2001. Thus, according to the defendant, Cranford does not qualify as an employer under the FMLA because an entity must employ fifty or more people during twenty workweeks for the FMLA to apply.

2. The court may treat motions for summary judgment asserting a lack of subject matter jurisdiction as factual attacks on the court's subject matter jurisdiction. *See, e.g., Scarfo,* 175 F.3d at 959–61 (finding that where defendant filed motion for summary judgment asserting lack of subject matter jurisdiction, court should consider motion under 12(b)(1) standard); *McMaster v. United States,* 177 F.3d 936 (11th Cir.1999) (treating United States' motion for summary judgment as a factual attack on subject matter jurisdiction); *Lombardi v. Lady of Am. Franchise Corp.,* No. 00CV7245CIV, 2002 WL 459717 (S.D.Fla. Mar.4, 2002) (holding that court was "fact-finder with the duty to weigh the evidence regarding subject matter jurisdiction," although defendant filed motion for summary judgment).

3. Cranford asserts that the owner/ operators are not employees, but independent contractors. In contrast, Brown argues that the owner/ operators must be included as employees under the statute. The court need not and does not decide if Cranford's so-called owner/ operators are employees under the FMLA because, even including the owner/ operators as employees, Brown still fails to establish that Cranford employed fifty or more employees during twenty or more weeks during 2000 and 2001.

Contesting Cranford's conclusion, Brown asserts that a review of Cranford's payroll documentation demonstrates that Cranford employed at least fifty people during exactly twenty weeks in 2001. These twenty weeks include the twelve weeks admitted by Cranford, as well as eight additional weeks. Like Cranford, Brown submitted a chart summarizing her analysis. She also provided the court a list of people she includes as employees during each of the eight additional weeks. Accordingly, Brown believes that the FMLA is applicable to Cranford.

After the motion hearing on November 25, 2002, the court conducted an independent review of the evidence submitted by the parties. Because the plaintiff bears the burden of establishing subject matter jurisdiction, the court begins by analyzing the plaintiff's submissions. *Dillard*, 89 F.Supp.2d at 1368. As an initial matter, the court notes that the plaintiff's summary lists contain some significant errors. For example, the employee payroll documents submitted to the court to support Brown's analysis of the workweek beginning on September 17, 2001 and ending on September 23, 2001 are not the payroll documents for that particular week. Instead, the documents are dated September 20, 2001, which means, according to Cranford's practice of paying employees eleven days in arrears, that the documents actual-

ly pertain to the workweek beginning on September 3, 2001 and ending on September 9, 2001. Moreover, during the workweek beginning on September 10, 2001 and ending on September 16, 2001, Brown counted at least one employee twice. According to Brown, Mary Lee and Francis Lee are two separate employees. However, these two names refer to the same employee, Mary Francis Lee, and should thus be counted as a single person.[4]

Most importantly, though, based on a misunderstanding of Cranford's payroll practices, Brown assigned some employees to weeks when they were not actually employed by Cranford. *See* 29 C.F.R. § 825.105(c) ("If there is no employer/employee relationship (as when an employee is laid off, whether temporarily or permanently) such individual is not counted"). For two of Brown's workweeks alleging just over fifty employees, these mistaken assignments reduce the total number of employees for that week to less than fifty. Accordingly, even if the plaintiff is right regarding the other six weeks alleged to have fifty or more employees, without the two weeks with mistaken assignments, Brown has only shown eighteen weeks during 2000 and 2001 with fifty or more employees. Thus, the plaintiff has failed to establish that Cranford qualifies as an employer under the FMLA, and the court has no subject matter jurisdiction over Brown's claim.[5]

---

**4.** The court believes Brown made the identical mistake during the same workweek in counting Arthur Lemon and Maurice Lemon as two separate individuals. The court notes that when these individuals are counted once, and Mary Bolton is excluded because she performed no work for Cranford after the week of September 3–9, 2001, there are only fifty Cranford employees for the week of September 10–16, 2001. Further, if the court removes Martin Joseph Roache from the list, *see supra* footnote 6, there are only forty-nine Cranford employees for that week. Accordingly, it is unlikely that the week of Septem-

ber 10–16, 2001 can count toward Cranford's requisite twenty weeks with fifty or more employees.

**5.** A review of the documents submitted by the plaintiff, in conjunction with Cranford's explanation of its employee-counting methodology at the motion hearing, demonstrates that some of the important discrepancies in the employee totals reached by the plaintiff and defendant stem from the different documents the parties utilized. It seems clear that Brown used not only the weekly payroll records for regular employees and owner/operators, but also summary payroll lists: docu-

**1320**

## A. *Workweek of January 15–21, 2001*

Specifically, the court believes that Brown fails to establish that Cranford employed fifty or more people during the workweeks of January 15–21, 2001 and January 22–28, 2001. During the week of January 15–21, 2001, Brown asserts that Cranford employed fifty-two people. After a review of the payroll documentation, the court believes that at least three of these employees were no longer working for Cranford on January 15, 2001. First, the plaintiff includes Dean Adams as a Cranford employee for the week of January 15–21, 2001. However, Cranford's vendor reports demonstrate that Dean Adams received his last paycheck from Cranford on January 25, 2001. Since employees are paid eleven days in arrears, this means that the last day Dean Adams could have worked for Cranford was January 14, 2001. Accordingly, although Dean Adams received a final paycheck on January 25, 2001, he no longer had an employer/ employee relationship with Cranford after January 14, 2001. 29 C.F.R. § 825.105(c). He should not be included as an employee during the week of January 15–21, 2001. *Id.; see also Laurie,* 256 F.3d at 1268–69.

Similarly, Night and Day Transport, included by Brown as an employee during the workweek of January 15–21, 2001, received its last check from Cranford on January 18, 2001. Again, because employees are paid eleven days in arrears, the last possible day Night and Day Transport could have performed services for Cranford was January 7, 2001. Although Night and Day Transport received a final pay-

check on January 18, 2001, the employment relationship between Night and Day Transport and Cranford ended, at the latest, on January 7, 2001. As such, Night and Day Transport should not be included as an employee for the week of January 15–21, 2001. 29 C.F.R. § 825.105(c).

Finally, Brown includes Betty Nelson as an employee during the week of January 15–21, 2001. According to Cranford's vendor reports, Betty Nelson received her final paycheck from Cranford on January 18, 2001. Like Night and Day Transport, this means that Betty Nelson performed no duties for Cranford after January 7, 2001. Therefore, Betty Nelson cannot be included as an employee for the week of January 15–21, 2001. 29 C.F.R. § 825.105(c). In her summary at PSUM5, Brown cites insurance and fuel reimbursement documents to show that Betty Nelson's employment relationship continued after January 7, 2001. But, the documents referenced by Brown list "B. Nelson" or "Be. Nelson." Rather than referring to Betty Nelson, these documents in fact refer to Bernard Nelson, a current employee of Cranford. Brown's confusion is illustrated by the fact that Brown uses document PSUM179 to show that Betty Nelson was reimbursed for fuel, and Brown uses document PSUM192 to show that Bernard Nelson was reimbursed for fuel. However, these two references, PSUM179 and PSUM192, are the exact same document and cannot support a finding that Betty Nelson was employed by Cranford after January 7, 2001.

Once these three employees—Dean Adams, Night and Day Transport, and

ments PSUM39–PSUM45. The court agrees with the plaintiff that, under the payroll method, these summary payroll lists, defining hiring and termination dates, are critical. *See Walters,* 519 U.S. at 202, 117 S.Ct. 660; 29 C.F.R. § 825.105. However, the so-called termination dates reflect the date an employee last received a paycheck. According to Cran-

ford's practice of paying employees eleven days in arrears, the actual employee/ employer relationship ended at least eleven days before the final paycheck was received. Thus, certain employees may not be counted during weeks they received paychecks because they had ceased working for Cranford prior to those workweeks.

Betty Nelson—are removed from Brown's list of employees for the week of January 15–21, 2001, the plaintiffs have shown Cranford employed only forty-nine people during that particular week.[6] Therefore, January 15–21, 2001 cannot be included as one of the twenty workweeks needed to make Cranford an employer under the FMLA. As such, Brown is left with only nineteen weeks, a number insufficient to establish subject matter jurisdiction over Brown's lawsuit.

### B.  *Workweek of January 22–28, 2001*

In addition to the week of January 15–21, 2001, the court also finds that Cranford did not employ fifty people during the week of January 22–28, 2001.  Although Brown asserts that Cranford employed fifty-one people during that week, a review of the evidence shows that Cranford, at most, employed only forty-nine people.  As discussed above, the payroll documents in-

dicate that Dean Adams did not perform services for Cranford after January 14, 2001.  Thus, Dean Adams cannot be included as an employee for the week of January 22–28, 2001.  Likewise, Timothy Cooper received his last check from Cranford on February 2, 2001.  Given the eleven-day delay between performance of services and payment, Timothy Cooper did not work for Cranford after January 21, 2001, at the latest.  Therefore, he cannot be included as employee for the workweek of January 22–28, 2001.

Including Dean Adams and Timothy Cooper, Brown asserts that Cranford employed fifty-one people during the workweek of January 22–28, 2001.  Once these two employees are removed from the plaintiff's list for that week, the plaintiff has only proven that Cranford employed forty-nine people.  Accordingly, the week of January 22–28, 2001 cannot be counted toward the requisite twenty workweeks.[7]

---

6.  It is questionable whether several other employees should be counted toward the total number of employees during the workweek of January 15–21, 2001.  First, Martin Joseph Roache is not named on any weekly payroll reports.  Instead, he is listed on a summary payroll document, PSUM45.  However, that document appears to show that he was hired on February 5, 1996 and is currently on workers' compensation.  Pursuant to 29 C.F.R. § 825.105(c), employees on paid or unpaid leave are counted, as long as there is "a reasonable expectation that the employee will later return to active employment."  The plaintiffs have provided no proof that Cranford has a reasonable expectation that Mr. Roache will return to active employment.  A similar analysis applies to Robert Brown.  Although not officially terminated until June 2001, he stopped working for Cranford in October 2000 and does not appear on any weekly payroll documentation submitted by the plaintiff.  Understandably, Mr. Brown was very ill.  However, he cannot be counted as an employee after Cranford no longer had a reasonable expectation he would return to active employment.  Without Mr. Brown and Mr. Roache, the total number of employees

for the workweek of January 15–21, 2001 is reduced from fifty-two to forty-seven, further substantiating the court's lack of subject matter jurisdiction.

7.  Again, there are several additional employees that Brown includes in her total for the workweek of January 22–28, 2001, although the court is uncertain as to whether they should be included.  For example, Brown includes both Robert Brown and Martin Joseph Roache for the workweek of January 22–28, 2001.  As discussed in footnote 6, these employees may or may not have reasonably been expected to return to work.  29 C.F.R. § 825.105(c).  Likewise, on document number PSUM45, Eric Perkins is listed as being terminated as of January 10, 2001, and on January 14, 2001, Eric Perkins received his final paycheck from Cranford.  *See* PSUM45.  Accordingly, it appears that Eric Perkins' employment relationship with Cranford ended on January 10, 2001, and he should not be included as an employee for the workweek of January 22–28, 2001.  However, fuel reimbursement documents at PSUM173 appear to show Eric Perkins fueling Cranford vehicles on January 25, 2001 and January 29, 2001.  Thus, it is unclear whether Mr. Perkins can be

### C. *Brown's Additional Affidavit*

In an attempt to support her opposition to Cranford's motion for summary judgment, Brown submits an affidavit claiming that "it is unlikely that the payroll documentation produced by Cranford to date fully represents the entire employee payroll of Cranford." She corroborates this assertion by saying she observed Pamela Parris and Kevin Cranford draft and sign paychecks to employees from a corporate checkbook rather than the normal payroll account. However, each of the individuals she identifies as receiving paychecks from the corporate checkbook is an owner/operator and not a salaried Cranford employee. At the motion hearing, Cranford's attorney explained that drafting checks from the corporate checkbook was the regular method of compensating owner/operators. As such, Brown's observations do not support the conclusion that Cranford's payroll documents fail to reflect all Cranford's payments to employees.

Moreover, the affidavit submitted by Brown does not delineate when these allegedly undisclosed transactions occurred. If the corporate checks were drafted while the named owner/operators were employed by Cranford, the existence of such checks makes no difference to the court's analysis. Even if all the statements in the affidavit are true, without more detail, the court cannot use Brown's affidavit to support a finding of subject matter jurisdiction. A similar analysis applies to the "[t]hirty-six additional individuals . . . listed in 2001 payroll documentation" referenced by Brown in her affidavit and her opposition to Cranford's summary judgment motion. Without information regarding hiring and firing dates, as well as whether these individuals were ever actually Cranford employees, the court cannot use this information to support a finding that subject matter jurisdiction exists.

### D. *Conclusion*

Without the weeks of January 15–21, 2001 and January 22–28, 2001, Brown has shown only eighteen weeks when Cranford employed fifty or more employees. Under the FMLA, Cranford is not an employer unless it employs fifty or more people for at least twenty workweeks in 2000 or 2001. 29 U.S.C. § 2611(4)(A)(i). Fulfilling the definition of employer is a jurisdictional prerequisite to suit under the FMLA, and when the defendant makes a factual attack on subject matter jurisdiction, the plaintiff bears the burden of establishing jurisdiction in this court. *Wascura*, 169 F.3d at 685; *Dillard*, 89 F.Supp.2d at 1368. Because the plaintiff has not done so, the court cannot adjudicate the dispute. The court hereby GRANTS Cranford's motion for summary judgment [Doc. No. 21–1].

### IV. *Summary*

For the foregoing reasons, the court lacks subject matter jurisdiction over this dispute. Therefore, Cranford Transportation Service, Inc.'s motion for summary judgment [Doc. No. 21–1] is GRANTED. Also, Brenda P. Brown's unopposed motion to file original discovery [Doc. No. 18–1] is GRANTED. This action is hereby DISMISSED.

---

included as a Cranford employee after his final paycheck was received, and his employment was terminated. If these three employees—Robert Brown, Martin Joseph Roache, and Eric Perkins—are excluded from the plaintiff's list for the week of January 22–28, 2001, then Brown is left with only forty-six employees, further substantiating the court's lack of subject matter jurisdiction.