[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-11985

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 6, 2009
THOMAS K. KAHN
CLERK

D.C. Docket No. 07-00665-CV-RDP

DENISE FREEMAN,

Plaintiff-Appellant,

versus

U.S. MARSHAL SERVICE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(February 6, 2009)

Before WILSON and COX, Circuit Judges, and ALBRITTON,[*] District Judge.

PER CURIAM:

Denise Freeman appeals the district court's summary judgment in favor of the

U.S. Marshal Service. We review a district court's grant of summary judgment de

_____

[*]Honorable William H. Albritton, III, United States District Judge for the Middle District of
Alabama, sitting by designation.

novo, applying the same legal standards that controlled the district court. *Means v. United States*, 176 F.3d 1376, 1378 (11th Cir. 1999).

On April 12, 2007, Freeman brought suit against the U.S. Marshal Service ("the Service") pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346. Her claims arise from the allegedly tortious conduct of a Court Security Officer ("CSO") at the Anniston, Alabama federal courthouse. Ninety days later, the Service moved for dismissal as a matter of law, or in the alternative, summary judgment, relying on the contract between the Service and AKAL Security, Inc. ("AKAL"), a private security company for which all Anniston courthouse CSOs worked, to argue that the CSO is an employee of the independent contractor only, not a federal employee for purposes of the FTCA. The district court converted the motion to one for summary judgment and ordered additional briefing. In her response to the Service's motion for summary judgment, Freeman requested denial of the motion on two grounds: (1) that, under the contract, the Service reserved the right to directly control the day-to-day operations of the CSOs; and (2) that discovery, which had not yet been taken in the case, would aid Freeman in proving facts of day-to-day control. (R.1-16 at 12.)

The district court granted summary judgment for the Service. In its order granting summary judgment, the court focused on the terms of the contract between the Service and the security contractor and found that, under the terms of that

contract, the CSO is not under federal control. (R.1-18 at 14.) The district court also found that there was no record evidence offered to contradict the terms of the contract. (*Id.* at 15.) Therefore, the district court held that the CSO is not a federal employee and the Service cannot be liable to Freeman pursuant to FTCA for acts of the CSO. (*Id.* at 14, 15, 21.) The district court did not address Freeman's request for time to conduct discovery.

Freeman appeals, arguing that the CSO should be considered a federal employee, rather than an independent contractor, for FTCA purposes. The Service disagrees and defends the judgment.

We apply the established "control test" to determine whether an individual is a government employee or an independent contractor for FTCA purposes. "[A] person is an employee of the Government if the Government controls and supervises the day-to-day activities of the alleged tortfeasor during the relevant time." *Patterson & Wilder Constr. Co. v. United States*, 226 F.3d 1269, 1274 (11th Cir. 2000). Applying this test, we consider the terms of the contract between the Service and AKAL and any other record facts that might illuminate the extent of the Service's control over CSO day-to-day activities.

Under the contract between the Service and AKAL, a Deputy Marshal is designated as the Contracting Officer's Technical Representative ("COTR"). The

COTR is responsible for providing post orders and standard operating procedures for each CSO post, assigning and scheduling patrol routes, authorizing CSO overtime, and directing CSOs to perform other court security related duties. A Lead CSO reports directly to the COTR, and each day the COTR "coordinates daily activities" with the Lead CSO. Additionally, the Service retains the authority to "remove" any CSO who fails to meet the Government's standards. These contractual provisions tend to support a finding that the Service controls and supervises the day-to-day activities of the alleged tortfeasor.

On the other hand, the contract specifies that AKAL should provide a supervisory structure for CSOs, including a Contract Manager, Site Supervisors, and Lead CSOs. These contractor employees are required to perform supervisory duties including "ensuring that all contractor employees adhere[] to the performance standards"; "oversee[ing] and manag[ing] the day-to-day operations of the CSO Program for their respective district"; "coordinat[ing] daily activities at his or her appointed facility directly with the COTR"; and, providing "a direct degree of supervision for the daily work of the CSOs." These contractual provisions seem to indicate that the contractor provides control and supervision over the day-to-day activities of the CSO.

As the district court recognized, the record in this case contains very little evidence other than the contract regarding the level of control exercised by the Service over the day-to-day activities of the CSOs. (R.1-18 at 14.) Because discovery had not yet begun at the time the motion for summary judgment was granted, no evidentiary facts other than the contract terms were presented regarding the daily interaction between the Service and CSOs at the Anniston courthouse. Nor were any facts presented about the role the Service may have had in the specific incidents at issue in the complaint.

Viewing the evidence in the light most favorable to Freeman, we find the terms of the contract alone insufficient to answer the question of whether the Service exercised control over the day-to-day activities of the CSO. We cannot say that no genuine issue of material fact exists as to whether the CSO is a federal employee for FTCA purposes. And, we have recognized that, where, as here, the inquiry necessary to resolve defendant's motion will resolve both the question of subject matter jurisdiction and a necessary element of the tort claim, discovery may be necessary prior to resolution of that motion. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1530 (11th Cir. 1990); *Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981).

We conclude that, while summary judgment may be appropriate in this case in the future, it was prematurely granted. Therefore, we vacate the summary judgment and remand to the district court for further proceedings, including discovery.

VACATED AND REMANDED.