[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 21-13752

————————————————

KAREN SANTIAGO,
individually and on behalf of all others similarly situated,
DEBORAH MOZINA,

                                        Plaintiffs-Appellants,

*versus*

HONEYWELL INTERNATIONAL, INC.,
a Delaware Corporation,

                                        Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Southern District of Florida

D.C. Docket No. 1:16-cv-25359-MGC

_____

Before NEWSOM, LUCK, and TJOFLAT, Circuit Judges.

LUCK, Circuit Judge:

Karen Santiago and Deborah Mozina sued Honeywell International, Inc., for negligently installing digital electric meters at their homes.  The district court dismissed their amended complaint with prejudice because, although Santiago and Mozina had Article III standing, they failed to state a claim for relief.  We do not reach whether Santiago and Mozina failed to state a claim because we conclude they lacked standing.  Thus, we reverse and remand for the district court to dismiss their amended complaint, without prejudice, for lack of jurisdiction.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 2009, Florida Power and Light hired Honeywell to install new "Smart Meters" at over four million Florida homes, including Santiago and Mozina's.  Florida Power and Light uses the Smart Meter to track customers' electricity usage for billing.  Installing a Smart Meter required plugging its metal prongs into a home's meter can receptacle, or "jaws."  The meter can jaws at the customers' homes were not uniformly sized or designed; instead, their dimensions varied from home to home.

Honeywell's contract with Florida Power and Light required it to inspect the meter cans to ensure the Smart Meters' prongs would properly fit the jaws.  A poor connection could spell

serious trouble for a homeowner.  It could cause system-wide arcing,[1] hot sockets, overheating, power surges, and burning of the meter can's components—conditions that risk damaging a house's electrical appliances or catching the house on fire.  Honeywell's technicians, however, did not inspect meter cans for defects or to make sure the Smart Meters would fit properly.  Most of the technicians were not even licensed electricians trained to spot the warning signs of poor connectivity.

As Honeywell's technicians installed the new Smart Meters, homeowners began having electrical problems that they didn't experience with their old analog meters.  Mozina, for instance, testified at her deposition that, since her Smart Meter was installed in 2013, several televisions, a fridge, an air conditioner, and "seven to ten" lightbulbs a year have all gone out.  Her lights dim "at least a couple times a week," too.  Mozina suspects that the Smart Meter's installation is causing these problems, but she has not called Florida Power and Light to report that suspicion.  She "had called them before with some issues [about her] bill."  The "main" issue was that her electric bills were "high," although her "bill always went up and down," because Florida Power and Light "estimat[ed]" her usage based "on past bills" instead of checking her old meter for "an exact reading."

---

[1] "Arcing" occurs when an electrical current jumps across a gap between one connection and another.

Many malfunctioning Smart Meters have caused damage that requires "repairing or replacing the . . . meter enclosure and its components." Florida Power and Light examined a sample of malfunctioning Smart Meters in 2013, and it found that seventy-eight percent of the meter cans required repair or replacement "to be in proper operating condition" again. Some homeowners have already hired inspectors and repairmen—all at their own expense. Mozina testified that she and her husband have "mentioned" having a licensed electrician inspect their meter "many times," but they "just don't have the money" for it. Her home hasn't been inspected since she and her husband bought it in 1996.

Santiago and Mozina sued Honeywell on behalf of themselves and other Florida homeowners with Smart Meters. Their operative amended complaint alleged two counts: one for "negligence/products liability" and one for "gross negligence/products liability." For relief, it requested an injunction requiring Honeywell "to remove—but not to replace—each [c]lass [m]ember's Smart Meter," use "a licensed electrician to adequately inspect [it] and the meter can" for damage, and give each class member photos and a report from the inspection. According to the amended complaint, "[t]here is simply no other way to alleviate [class members'] fear" of property damage "other than a proper inspection."

Honeywell moved to dismiss the amended complaint for lack of standing and, alternatively, for failure to state a claim. It argued Santiago and Mozina did not suffer any Article III injury and, similarly, that they did not suffer "actual harm" as required for

their negligence claims. Santiago and Mozina responded they were injured and actually harmed in four ways: (1) Honeywell trespassed by entering and altering their property without their permission; (2) Mozina's Smart Meter was inaccurately inflating her bills; (3) the Smart Meters "exposed" Santiago and Mozina "to the cost [of] hiring an inspector to inspect the meter can for damage"; and (4) the Smart Meters' improper installation caused ongoing property damage (like to Mozina's appliances) and threatened future damage, diminishing property values.

After a hearing, the district court granted the motion to dismiss. First, as to standing, it treated Honeywell's motion as a factual attack under Federal Rule of Civil Procedure 12(b)(1) because Honeywell relied on Mozina's testimony during the hearing, and both plaintiffs "had the opportunity to respond" with their own evidence. It then concluded Santiago and Mozina had standing because there was a substantial risk the Smart Meters would damage their property. The district court rejected their other standing theories, though. It explained that: (1) the alleged trespass wasn't sufficiently concrete; (2) Mozina's inflated bills weren't traceable to her Smart Meter because her testimony "clarified" that she received those bills before ever getting a Smart Meter; (3) neither Santiago nor Mozina had hired an inspector; and (4) the amended complaint didn't allege that their properties diminished in value.

On the merits, the district court concluded the amended complaint failed to state either a negligence or gross negligence claim. Florida law required "some actual harm" to show

6                    Opinion of the Court                    21-13752

negligence and gross negligence, and, the district court reasoned, the mere risk of future damage to Santiago and Mozina's properties wasn't enough.  So, the district court dismissed the amended complaint with prejudice.

## DISCUSSION

On appeal, Santiago and Mozina argue that the district court erred by dismissing their amended complaint for failing to state a claim.  But before we can consider if Santiago and Mozina stated a claim, we must assure ourselves that one of them has standing to seek their requested injunctive relief.  *See Lewis v. Governor of Ala.*, 944 F.3d 1287, 1296 (11th Cir. 2019) (en banc) ("[S]tanding to sue implicates jurisdiction . . . ."); *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1124–25 (11th Cir. 2019) (explaining that, in a putative class action like this one, at least one named plaintiff must have standing for each form of relief sought in the complaint).  We conclude that neither Santiago nor Mozina have standing to seek that relief.[2]

---

[2] We review de novo a district court's conclusions regarding standing, and we review for clear error its findings of jurisdictional facts. *Kennedy v. Floridian Hotel*, 998 F.3d 1221, 1233 n.5 (11th Cir. 2021).  Because the district court treated Honeywell's standing challenge as a rule 12(b)(1) factual attack—which Santiago and Mozina don't assert as error—it could consider matters outside the amended complaint, like Mozina's deposition testimony. *See id.*; *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990) (explaining that factual attacks, unlike facial attacks, "challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings'" (citation omitted)).  We do the same.

It is well-established that, to have standing, a plaintiff must show three things.  First, the plaintiff must have an injury in fact "that is both (a) 'concrete and particularized' and (b) 'actual or imminent, not conjectural or hypothetical.'"  *Lewis*, 944 F.3d at 1296 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur."  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (marks omitted) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 & n.5 (2013)).  Second, the injury must be fairly traceable to the defendant's challenged conduct. *Lewis*, 944 F.3d at 1296.  And third, it must be redressable by "an order directed at the defendant," meaning that the order "would make it significantly more likely that [the plaintiff] would obtain relief that directly remedies his injury." *Baughcum v. Jackson*, 92 F.4th 1024, 1031–32 (11th Cir. 2024) (citations omitted) ("[I]t must be the effect of the court's judgment on the defendant, rather than some third party, that redresses the injury . . . ."); *Lewis*, 944 F.3d at 1296 ("[T]he plaintiff must show that it is likely, not merely speculative, that a favorable judgment will redress her injury."  (citing *Lujan*, 504 U.S. at 561)).

With these three requirements in mind, we turn to Santiago and Mozina's standing theories—which are largely the same ones that they pressed in the district court.[3]

---

[3] There is one exception.  Santiago and Mozina don't argue, as they did in the district court, that they have standing because Honeywell trespassed by entering and altering their properties without permission.  Likely, they do not press

*Inspection Costs*

We begin with Santiago and Mozina's contention that they have standing because, if Honeywell doesn't inspect their meters, then they will have to foot the bill for their own inspectors. We agree with the district court that the inspection costs theory fails at the first standing requirement—injury in fact.

The theory fails because it is purely hypothetical whether Santiago and Mozina will pay for an inspector in the future. The amended complaint only offers vague allegations that Santiago and Mozina's Smart Meters "may" require them to pay for their own inspectors. It does not allege that they currently plan to hire inspectors, who their desired inspectors are, or even when they might hire inspectors. Nor did Mozina, specifically, testify about any concrete plan to hire an inspector during her deposition. She testified that while she and her husband have discussed the possibility "many times," she doesn't "have the money" for it. Mozina does not have her home regularly inspected, either—it hasn't been inspected since she bought it in 1996.

On these facts, Santiago and Mozina do not face "certainly impending" inspection costs or a "substantial risk" of them. *See Susan B. Anthony List*, 573 U.S. at 158 (citation omitted). The facts

---

the trespass theory because Santiago and Mozina's requested relief would not redress the challenged trespass. The proposed injunction wouldn't require that their properties be restored to its original condition, for example; it would only require that Honeywell inspect the meters and report any damage.

21-13752                Opinion of the Court                9

show, at best, that Santiago and Mozina might hire an inspector on some unspecified future date. "Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of . . . 'actual or imminent' injury." *Lujan*, 504 U.S. at 564 & n.2 ("[Imminence] has been stretched beyond the breaking point when . . . the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff's own control.").

*Actual or Imminent Property Damage*

Second, we consider Santiago and Mozina's argument that they have standing because their Smart Meters have caused ongoing electrical problems and will cause future property damage. Even assuming that this property damage theory satisfies the injury and traceability requirements, it doesn't satisfy the redressability requirement.

Santiago and Mozina's requested injunction is, fundamentally, one ordering Honeywell to inspect their Smart Meters at its own expense. It would compel Honeywell "to remove" the Smart Meters—"but *not* to replace" or repair them—so that a "licensed electrician [can] adequately inspect the meter and the meter can," photograph any damage, and report it to the homeowner. That prospective remedy would do nothing to redress past property damage like Mozina's lost televisions, fridge, air conditioner, and lightbulbs. *See Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) ("[I]njunctions regulate future conduct . . . .").

Nor is the requested injunction "significantly more likely" to redress ongoing electrical problems (like Mozina's dimming lights) or the risk of future ones. *Baughcum*, 92 F.4th at 1032. The amended complaint repeatedly emphasizes that, based on Florida Power and Light's 2013 study, many malfunctioning Smart Meters cannot function properly without "repairing or replacing the . . . meter enclosure and its components." Yet the amended complaint does not request that Honeywell repair or replace bad meter components, or that it properly reinstall new meters. It only requests that Honeywell hire an inspector to take off the Smart Meters, photograph any damage, and then put the same malfunctioning Smart Meters back on without fixing any damage.

Santiago and Mozina argue that an inspection would alleviate the risk of property damage because it would "provide . . . the information needed to replace or repair whatever is damaged—be it the Smart Meter, the meter can, or other damaged items." They insist that "[i]f an inspection identifies a problem" they "will exercise whatever rights they have in getting it fixed," although whether it's them or Honeywell who "makes [the] replacement or repair . . . remain[s] to be seen." But the test for redressability is not whether a favorable decision may inform an unknown actor—it "remain[s] to be seen" who—how she might remedy an injury at some unspecified future time. The test is whether "the effect of the court's judgment" itself is likely to remedy the injury. *Baughcum*, 92 F.4th at 1031–32.

Applied here, Santiago and Mozina haven't shown their requested injunction is likely to do so because they only speculate that someone, someday, will use the inspections' findings to fix their meters. *See Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 44 (1976) ("[U]nadorned speculation will not suffice to invoke the federal judicial power."); *cf. Warth v. Seldin*, 422 U.S. 490, 507 (1975) (concluding the plaintiffs didn't show standing because they "rel[ied] on little more than the remote possibility, unsubstantiated by allegations of fact, that their situation . . . might improve were the court to afford relief"). And because mere speculation is not enough to show redressability, Santiago and Mozina have not shown standing through their property damage theory.

*Inflated Electric Bills*

Finally, we consider Mozina's assertion that she has standing because her electric bills are inaccurately inflated.[4] We agree with her that paying inflated electric bills is an actual, concrete injury. *See Lewis*, 944 F.3d at 1296 (noting that economic harm is a well-established Article III injury). But her inflated bills theory falls short at traceability and redressability.

Mozina has not shown her inflated bills are traceable to Honeywell's challenged conduct because, as the district court found, her bills were only inflated *before* Honeywell installed the Smart Meter. We cannot say the district court's factual finding was

---

[4] Santiago points us to no complaint allegation or evidence that her bills are inflated.

clearly erroneous because it "is plausible in light of the record." *See Holladay v. Allen*, 555 F.3d 1346, 1354 (11th Cir. 2009) (citation omitted) (explaining that we will find clear error only if "left with the definite and firm conviction that a mistake has been committed"). Mozina herself testified that, although she did not report her malfunctioning Smart Meter to Florida Power and Light, she *"had called them before"* about inflated bills. The "main" issue, she explained, was that her bills were "high" because Florida Power and Light "estimat[ed]" her usage based "on past bills" rather than checking her meter for "an exact reading." She did not describe any additional billing issues that started after getting a Smart Meter.

That Mozina only received inaccurately inflated bills before Honeywell installed her Smart Meter also shows that her requested relief cannot redress the injury. Mozina only seeks prospective injunctive relief, not damages. "Logically, [that] prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past." *Church*, 30 F.3d at 1337 (citation omitted).

Mozina—relying on her failure-to-state-a-claim arguments—contends that her testimony did not "disprove[] or negate[] the clear allegation *in the [a]mended [c]omplaint* that, as a result of her malfunctioning Smart Meter, [she] was paying more for electricity." But the district court was not required to credit that allegation. That's because Honeywell challenged Mozina's standing through a rule 12(b)(1) factual attack and, "when the attack is factual, . . . no presumptive truthfulness attaches to [the] plaintiff's allegations." *Lawrence*, 919 F.2d at 1529 (marks and citation

omitted).   Instead, factual attacks like Honeywell's "challenge the existence of subject matter jurisdiction . . . *irrespective of the pleadings*," allowing a district court "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id*. (emphasis added, marks and citations omitted).   Here, the evidence was entirely one-sided.   Honeywell's evidence was Mozina's testimony that her inflated bills occurred before she ever received a Smart Meter.   And, as the district court observed, Mozina offered no evidence of inflated bills after her Smart Meter was installed; she instead stood on a single complaint allegation that the Smart Meter is inflating her bills.   That lone allegation, without more, did not satisfy the district court—nor does it satisfy this one—that Mozina had standing.

In any event, even if we credited the amended complaint's allegation about post-installation inflated bills as true now, we would still conclude Mozina failed to show redressability.   As we've discussed, Mozina hasn't shown her requested relief is likely to result in a properly functioning meter.   She only seeks an inspection of one that's already malfunctioning and will likely keep inaccurately inflating her bills until it's fixed.

## CONCLUSION

Because Santiago and Mozina lack standing, we do not reach whether their amended complaint stated claims for negligence and gross negligence.   We reverse the district court's order and remand with instructions that it dismiss the amended complaint, without prejudice, for lack of jurisdiction.   *See Boda v. United States,* 698 F.2d

1174, 1177 n.4 (11th Cir. 1983) ("Where dismissal can be based on lack of subject matter jurisdiction and failure to state a claim, the court should dismiss on only the jurisdictional grounds.  This dismissal is without prejudice." (citation omitted)).

**REVERSED and REMANDED**.